THERESA SIMONE *v.* THE RHODE ISLAND COMPANY.

JANUARY 15, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Negligence.  Common Carriers.  Question for Jury.*

Since a presumption of negligence arises from the collision between two cars operated by a common carrier, casting the burden of explanation upon the defendant, the question of the reasonableness of the explanation being one for the jury, the court can not disturb a verdict for the plaintiff, on the ground that there was no evidence of negligence.

(2) *Evidence.*

A physician who had prior to the trial attended the plaintiff may be interrogated as to his opinion, based upon his observation of the case, as to the time of the ultimate recovery.

(3)  *Damages for Fright without Physical Injury at Time.*

Where the negligence of a defendant is such as to cause fright, and as a natural consequence of such fright a series of physical ills follow, or if the fright as a cause gives rise to nervous disturbances and those in turn to physical troubles, the defendant is liable for the physical results of its own negligence, although there was no actual physical injury at the time of the accident.

Trespass on the Case for negligence.  Heard on exceptions of defendant, from Superior Court, and exceptions overruled.

.Parkhurst, J.  This is an action by a widow to recover for loss of the services of her minor daughter, caused, as she alleges, by the negligence of the defendant's servants, whereby the minor child was injured and disabled from earning the wages which she had earned prior to the accident and turned over to her mother.

It appears in evidence that on the morning of December 17, 1904, the plaintiff's minor daughter, then about seventeen or eighteen years old, was a passenger in a car of the defendant, proceeding easterly from Olneyville on Westminster street in Providence, and was seated about midway of the car on the left-hand side thereof talking with a friend when the car reached a point near the junction of Broadway and Westminster street, where there is a switch crossing over from the east-bound track and so arranged as to enable a car taking the switch to turn from Westminster street into Broadway.  When the car in question had approached this switch near enough to allow the motorman to turn the switch, he stopped the car and turned the switch so as to enable his car to proceed along the straight track easterly on Westminster street, and then started his car forward; the wheels of the forward truck passed the switch in the usual manner as intended, but the wheels of the rear truck, in some way and for some reason unexplained, "split the switch," as it is called, *i. e.*, in some unknown way the switch was so far opened that the rear wheels left the straight or main track and proceeded on the switch track towards Broadway, thereby approaching the line of the west-bound track; as soon as the motorman perceived that the rear of his car was thus slewing toward the west-bound track, he put on his brake and stopped the car, but not quickly enough to avoid a collision with a

west-bound car, operated by the defendant's servants, which was proceeding at this time towards Olneyville on the west-bound track. This latter car had stopped, according to custom, on approaching the said switch or cross-over track, and its motorman, seeing the other car apparently passing the switch in safety, had thereupon started his car, intending to pass onward westerly into Olneyville, when, just as he was coming alongside of the other car, he saw its rear end slewing towards the track on which he was proceeding, and immediately applied his brake, but not quickly enough to avoid a collision. The forward end of the west-bound car struck the side of the east-bound car, towards its rear end, just before they stopped, doing little, if any, damage to the cars, which moved only a few inches before they stopped altogether.

The testimony shows that the collision was not a violent one, and it does not appear that any particular damage was done to either of the cars, or that any person, other than the plaintiff's daughter, was injured; although Miss Gillan, the friend with whom Miss Simone was sitting and conversing at the time, says: "I was very badly shaken up," and that there was a "crash."

It further appears that Miss Simone fainted immediately after the "crash," and was taken from the car into a drug store, where she recovered from her fainting fit, and was then taken home. It does not appear that she suffered any actual external bodily injury at the time of the collision; and she herself testifies that when she heard the crash she was frightened with the idea that the car had been struck by a steam train at the crossing of the steam railroad at Plainfield street, and immediately fainted. After she got home she claims that she suffered from vomiting, insomnia, headache, pains in the left side, left leg and back, the pains sometimes going across to her right side; that she remained in bed for nearly three months, was too weak to get up without assistance, and continued to suffer from headaches and the pains above mentioned; had frequent fainting attacks, continued to suffer from insomnia and nervous disorders and weakness down to the time of the trial, and that she has suffered complete failure to perform her menstrual functions.

A doctor was called to her on the day of the accident, and

attended her subsequently for some weeks.   He made a complete physical examination of her, and he does not testify that he found any external injury to her body whatever; and there is no other evidence tending to show any external physical injury.

We think it is fairly to be inferred, from all the testimony in the case, that whatever physical sufferings and disorders resulted to the plaintiff's daughter were due to nervous shock brought on by fright.

The jury returned a verdict for the plaintiff for the sum of $400.

The defendant asks to have this verdict set aside:

1.   Because there is no proof of negligence on the part of the defendant.

2.   Because the plaintiff's daughter was not injured as a result of the accident.

3.   Because the damages were excessive.

4.   Because the Superior Court erred in its rulings in admission of testimony, and in its charge to the jury.

As to the proof of negligence of the defendant company, it is uncontradicted that there was a collision between two cars, both operated by the defendant company, and a presumption of negligence arises from this fact which places the burden of explanation upon the defendant; the question of the defendant's negligence was therefore properly submitted to the jury, and it was for the jury to say whether the explanation offered by the defendant was or was not a satisfactory explanation. The jury, having found for the plaintiff, must have found that the defendant was negligent, and this court can not properly set the verdict aside on that ground.

As to the question whether the plaintiff's daughter was or was not injured as a result of the accident, there was some conflict of testimony as to certain claims of injury, as to the nature, character, and extent of the actual suffering of the plaintiff's daughter, and as to whether such suffering was a result of the accident or was due to her previous physical conditions; and it was therefore properly left to the jury to determine whether

such injuries as the plaintiff's daughter actually suffered were the result of the accident or were due to other and independent causes. We can not properly disturb the verdict on this ground, since the jury have found for the plaintiff.

Nor do we think the amount of the verdict is excessive, in view of the previous earning capacity of the plaintiff's daughter, and of the length of time the plaintiff has been and probably will be deprived of the earnings, while still bound to support and maintain her minor child.

All of the foregoing questions were properly submitted to the jury, and we do not find that the evidence was insufficient to warrant the jury in finding its verdict for the plaintiff.

The defendant urges the following exceptions, relating to alleged errors of law of the Superior Court:

1. That the court erred in admitting a question which plaintiff's attorney asked of one of the physicians who had previously attended Miss Simone, some eight months prior to the trial, asking for his opinion as to the time of her ultimate recovery; the question as finally framed was based upon his observation of the case, and was properly admitted; and the doctor answered that he could not tell; so that no harm was done to the defendant in any event.

2. That the court erred in its refusal to charge the jury, as requested by the defendant, as follows:

"The plaintiff can not recover for the effects upon her daughter of fright at the time of the accident, not accompanied by physical injury."

"If the fright of the plaintiff, at the time of the accident, was due to imagining that a steam railroad train had run into the car upon which she was riding, she can not recover for the effects of the fright, so caused."

and erred in charging the jury as follows:

"If that fright was followed by a series of physical ills as its natural consequence; if that fright as a cause gave rise to nervous disturbances and those in turn to physical troubles, and that fright itself was caused by the negligence of the defendant, then the defendant would be liable for the physical results of its own negligence."

These rulings bring squarely before this court the question whether there can be a recovery for bodily injury caused by fright when the fright was caused by the negligence of the defendant, where there was no actual physical injury at the time of the accident, but where the fright was followed by a series of physical ills as its natural consequence; where the fright as a cause gave rise to nervous disturbances and those in turn to physical troubles.

This question has not heretofore been determined in this State, and the cases relating thereto in other jurisdictions have given rise to widely differing decisions.

The defendant contends that this court should be governed by the rule laid down in *Mitchell* v. *Rochester Railway Co.*, 151 N. Y. 107, where the court says (p. 108) (Martin J.):

"The facts in this case are few and may be briefly stated. On the first day of April, 1891, the plaintiff was standing upon a crosswalk on Main street in the city of Rochester, awaiting an opportunity to board one of the defendant's cars which had stopped upon the street at that place. While standing there, and just as she was about to step upon the car, a horse car of the defendant came down the street. As the team attached to the car drew near, it turned to the right and came so close to the plaintiff that she stood between the horses' heads when they were stopped.

"She testified that from fright and excitement caused by the approach and proximity of the team she became unconscious, and also that the result was a miscarriage and consequent illness. Medical testimony was given to the effect that the mental shock which she then received was sufficient to produce that result.

"Assuming that the evidence tended to show that the defendant's servant was negligent in the management of the car and horses, and that the plaintiff was free from contributory negligence, the single question presented is whether the plaintiff is entitled to recover for the defendant's negligence which occasioned her fright and alarm, and resulted in the injuries already mentioned. While the authorities are not harmonious upon this question, we think the most reliable and better con-

sidered cases, as well as public policy, fully justify us in holding that the plaintiff can not recover for injuries occasioned by fright, as there was no immediate personal injury," citing cases. . . .

"If it be admitted that no recovery can be had for fright occasioned by the negligence of another, it is somewhat difficult to understand how a defendent would be liable for its consequences. Assuming that fright can not form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of fright, or the extent of the damages. The right of action must still depend upon the question whether a recovery may be had for fright. If it can, then an action may be maintained, however slight the injury. If not, then there can be no recovery, no matter how grave or serious the consequences. Therefore, the logical result of the respondent's concession would seem to be, not only that no recovery can be had for mere fright, but also that none can be had for injuries which are the direct consequences of it.

"If the right of recovery in this class of cases should be once established, it would naturally result in a flood of litigation in cases where the injury complained of may be easily feigned without detection, and where the damages must rest upon mere conjecture or speculation. The difficulty which often exists in cases of alleged physical injury, in determining whether they exist, and if so, whether they were caused by the negligent act of the defendant, would not only be greatly increased, but a wide field would be opened for fictitious or speculative claims. To establish such a doctrine would be contrary to principles of public policy."

And the defendant cites in support of the same doctrine the cases of *Ewing* v. *P. C. & St. Louis Ry. Co.*, 147 Pa. St. 40; *Deming* v. *C. R. I. & P. Ry. Co.*, 80 Mo. App. 154; *Haile's Curator* v. *Tex. & Pa. Ry. Co.*, 60 Fed. 558; *Lehman* v. *Brooklyn City R. Co.*, 47 Hun. 355; *Scheffer* v. *Ry. Co.*, 105 U. S. 249; *Mahoney*

*v. Dankwart,* 108 Iowa, 321; *Victorian R'way. Commrs.* v. *Coultas,* L. R. 13 App. Cases 222.

All these were cases where there was evidence of actual physical or nervous disorders, such as miscarriage, or insanity, nervous prostration or other serious disorders, shown to have been the results of negligence of the defendant in the several cases; and in all of these cases the courts substantially adhere to the rule contended for by defendant in this case, some finding that the damages proved were too remote and were not the proximate result of the defendant's negligence, and many of them taking the same ground as to public policy as was set forth in the above quotation from *Mitchell* v. *Rochester Ry. Co., supra.*

The balance of the cases cited on behalf of defendant, to wit: *Gulf C. & St. Fe. Ry. Co.* v. *Trott,* 86 Tex. 412; *Wyman* v. *Leavitt,* 71 Me. 227; *A. T. & St. Fe. Ry. Co.* v. *McGinnis,* 46 Kan. 109; *The Queen,* 40 Fed. 694; *Kalen* v. *Terre Haute &c. R. Co.,* 18 Ind. App. 202, were all cases where it appeared that the claim was for mere fright, fear, or terror, not accompanied by any immediate physical injury and not shown to have been followed by any nervous or physical disorder of any kind as a result of the fright, etc. These cases, therefore, do not apply here.

One case not cited on defendant's brief, but seemingly quite as closely applicable in its doctrine as those above referred to, is that of *Spade* v. *Lynn & Boston R. R. Co.,* 168 Mass. 285, where it is held that in an action to recover damages for an injury sustained through the negligence of another, there can be no recovery for a bodily injury caused by mere fright and mental disturbance. The court (Allen, J.) says (p. 287):

"The case calls for a consideration of the real ground upon which the liability or non-liability of a defendant guilty of negligence in a case like the present depends. The exemption from liability for mere fright, terror, alarm, or anxiety does not rest on the assumption that these do not constitute an actual injury. They do in fact deprive one of enjoyment and of comfort, cause real suffering, and to a greater or less extent disqualify one for the time being from doing the duties of life. If

these results flow from a wrongful or negligent act, a recovery therefor can not be denied on the ground that the injury is fanciful and not real.  Nor can it be maintained that these results may not be the direct and immediate consequence of the negligence.  Danger excites alarm.  Few people are wholly insensible to the emotions caused by imminent danger, though some are less affected than others.

"It must also be admitted that a timid or sensitive person may suffer not only in mind, but also in body, from such a cause.  Great emotion may and sometimes does produce physical effects.  The action of the heart, the circulation of the blood, the temperature of the body, as well as the nerves and the appetite, may all be affected.  A physical injury may be directly traceable to fright, and so may be caused by it.  We can not say, therefore, that such consequences may not flow proximately from unintentional negligence, and if compensation in damages may be recovered for a physical injury so caused, it is hard on principle to say why there should not also be a recovery for the mere mental suffering when not accompanied by any perceptible physical effects.

"It would seem therefore that the real reason for refusing damages sustained from mere fright must be something different; and it probably rests on the ground that in practice it is impossible satisfactorily to administer any other rule.  The law must be administered in the courts according to general rules.  Courts will aim to make these rules as just as possible, bearing in mind that they are to be of general application.  But as the law is a practical science, having to do with the affairs of life, any rule is unwise if in its general application it will not as a usual result serve the purposes of justice.  A new rule can not be made for each case, and there must therefore be a certain generality in rules of law, which in particular cases may fail to meet what would be desirable if the single case were alone to be considered."

(p. 290)  "The law of negligence in its special application to cases of accidents has received great development in recent years.  The number of actions brought is very great.  This should lead courts well to consider the grounds on which claims

for compensation properly rest, and the necessary limitations of the right to recover.   We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is no injury to the person from without.   The logical vindication of this rule is, that it is unreasonable to hold persons who are merely negligent bound to anticipate and guard against fright and the consequences of fright; and that this would open a wide door for unjust claims, which could not successfully be met.   These views are supported by the following decisions: *Victorian R'way. Commrs.* v. *Coultas, L. R.* 13 App. Cas. 222;   *Mitchell* v. *Rochester Ry. Co.*, 151 N. Y. 107; *Ewing* v. *P. C. & St. Louis Ry. Co.* 147 Penn. St. 40;   *Haile's Curators* v. *Tex. & Pa. Ry. Co.*, 60 Fed. 557.''

We are not able to follow the rule laid down in the above quoted cases.   It is always a question, frequently of much difficulty, to be decided in the particular case, whether the injury for which damages are sought is the proximate result of the act or acts complained of.   But when it is admitted, as it is in *Spade* v. *Lynn & Boston R. Co., supra,* that in a large class of cases there may be injuries of the most serious character directly resulting from the negligence of the defendant, as a proximate cause, for which the law will afford no remedy because of some probable difficulty or occasional injustice in the administration of a more liberal rule, it appears to us that the conclusion is quite illogical and is a pitiful confession of incompetence on the part of courts of justice.

The Supreme Judicial Court of Massachusetts, through Holmes, J., in speaking of the rule laid down in *Spade* v. *R. Co., supra,* said, in *Homans* v. *Boston Elevated R. Co.*, 180 Mass. 456, p. 457: "As has been explained repeatedly, it is an arbitrary exception, based upon a notion of what is practicable, that prevents a recovery for visible illness resulting from nervous shock alone.   .   .   .   But when there has been a battery and the nervous shock results from the same wrongful manage-

ment as the battery, it is at least equally impracticable to go
further and to inquire whether the shock comes through the
battery or along with it.   Even were it otherwise, recognizing
as we must the logic in favor of the plaintiff when a remedy is
denied because the only immediate wrong was a shock to the
nerves, we think that when the reality of the cause is guaranteed
by proof of a substantial battery of the person there is no oc-
casion to press further the exception to general rules."

We trust we may be excused for calling such a rule illogical,
when the same court which promulgated the rule has given us
its own opinion in such plain terms to the same effect.

We think that the rule laid down in the cases hereinafter dis-
cussed is the logical rule in such cases, and fully supports the
ruling of the Superior Court in the case at bar.

In *Bell* v. *Great Northern Railway Co.*, 26 L. R. (Ire.) Ex. Div.
428, 438, *et seq.*, the syllabus shows that: "While A. was travel-
ling as a passenger in an excursion train over portion of the
defendants' line of railway, the train, which was too heavy to
be carried by the engine up an incline, was divided by the de-
fendants' servants, the carriage occupied by A., with certain
others, remaining attached to the engine.   The hinder part of
the train having thereupon descended the incline with great
velocity, the engine was reversed, and with the remaining
carriages (including that in which A. was seated) followed down
the incline, also at a high rate of speed, until stopped with a
violent jerk.

" In an action for injuries sustained by A. it was proved that
A. was put in great fright by the occurrence, and that she suf-
fered from nervous shock in consequence of such fright.   She
was incapacitated from performing her ordinary avocations;
and medical witnesses were of opinion that her symptoms might
result in paralysis.

" The learned judge in charging the jury told them that if
great fright was, in their opinion, a reasonable and natural con-
sequence of the circumstances in which the defendants had
placed A., and she was actually put in great fright by these
circumstances, and if injury to her health was, in their opinion,
a reasonable and natural consequence of such great fright, and

was actually occasioned thereby, damages for such injury would not be too remote, and might be given for them.".   .   .

Palles, C. B., says, p. 438 *et seq.*: "It is, then, to be observed: (1) that the negligence is *a* cause of the injury, at least in the sense of a *causa sine qua non;* (2) that no intervening independent cause of the injury is suggested; (3) that jurors, having regard to their experience of life, may hold fright to be a natural and reasonable consequence of such negligence as occurred in the present case.

"If, then, such bodily injury as we have here may be a natural consequence of fright, the chain of reasoning is complete. But the medical evidence here is such that the jury might from it reasonably arrive at the conclusion that the injury, similar to that which actually resulted to the plaintiff from the fright, might reasonably have resulted to any person who had been placed in a similar position. It has not been suggested that there was anything special in the nervous organization of the plaintiff which might render the effect of the negligence or fright upon her different in character from that which it would have produced in any other individual. I do not myself think that proof that the plaintiff was of an unusually nervous disposition would have been material to the question; for persons, whether nervous or strong-minded, are entitled to be carried by railway companies without unreasonable risk of danger; and my only reason for referring to the circumstance is to show that, in this particular case, the jury might have arrived at the conclusion that the injury which did, in fact, ensue was a natural and reasonable consequence of the negligence which actually caused it.

"Again, it is admitted that, as the negligence caused fright, if the fright contemporaneously caused physical injury, the damage would not be too remote. The distinction insisted upon is one of time only. The proposition is that, although, if an act of negligence produces such an effect upon particular structures of the body as at the moment to afford palpable evidence of physical injury, the relation of proximate cause and effect exists between such negligence and the injury, yet such relation *can not* in law exist in the case of a similar act producing

upon the same structures an effect which, at a subsequent time— say a week, a fortnight, or a month—must result, without any intervening cause, in the same physical injury. As well might it be said that a death caused by poison is not to be attributed to the person who administered it because the mortal effect is not produced contemporaneously with its administration. This train of reasoning might be pursued much farther; but in consequence of the decision to which I shall hereafter refer, I deem it unnecessary to do so."

The court then proceeds to criticise *Victorian R'way Commrs.* v. *Coultas, supra,* and refuses to follow its rule; and concludes as follows (p. 442.):

"In conclusion, then, I am of the opinion that, as the relation between fright and injury to the nerve and brain structures of the body is a matter which depends entirely upon scientific and medical testimony, it is impossible for any court to lay down, as a matter of law, that if negligence cause fright, and such fright, in its turn, so affects such structures as to cause injury to health, such injury can not be 'a consequence which, in the ordinary course of things would flow from the' negligence, unless such injury 'accompany such negligence in point of time."

In *Purcell* v. *St. Paul City Ry. Co.,* 48 Minn. 134, 138, it was held that if the negligence of a carrier place a passenger in a position of such apparent imminent peril as to cause fright, and the fright causes nervous convulsions and illness, the negligence is the proximate cause of the injury, and the injury is one for which an action may be brought. A passenger injured by negligence of the carrier is entitled to recover to the full extent of the injury so caused, without regard to whether, owing to his previous condition of health, he is more or less liable to injury.

It was said by Gilfillan, C. J. (p. 138): "There may be a succession of intermediate causes, each produced by the one preceding, and producing the one following it. It must appear that the injury was the natural consequence of the wrongful act or omission. The new, independent, intervening cause must be one not produced by the wrongful act or omission, but

independent of it, and adequate to bring about the injurious result.   Whether the natural connection of events was maintained, or was broken by such new, independent cause, is generally a question for the jury.   In this case the only cause that can be suggested as intervening between the negligence and the injury is plaintiff's condition of mind, to wit, her fright. Could that be a natural, adequate cause of the nervous convulsions?   The mind and body operate reciprocally on each other. Physical injury or illness sometimes causes mental disease.   A mental shock or disturbance sometimes causes injury or illness of body, especially of the nervous system.   Now, if the fright was the natural consequence of—was brought about, caused by —the circumstances of peril and alarm in which defendant's negligence placed plaintiff, and the fright caused the nervous shock and convulsions and consequent illness, the negligence was the proximate cause of those injuries.   That a mental condition or operation on the part of the one injured comes between the negligence and injury does not necessarily break the required sequence of intermediate causes.   If a passenger be placed, by the carrier's negligence, in apparent, imminent peril, and, obeying the natural instinct of self-preservation, endeavor to escape it by leaping from the car or coach, and in doing so is injured, he may, if there be no contributory negligence on his part, recover for the injury, although, had he remained in the car or coach, he would not have been injured.   The endeavor to escape is not of itself contributory negligence.   *Wilson* v. *Northern Pac. R. Co.*, 26 Minn. 278 (3 N. W. Rep. 333). In such case, though there comes, as an intermediate cause between the negligence and injury, a condition or operation of mind on the part of the injured passenger, the negligence is nevertheless the proximate cause of the injury.   The defendant suggests that plaintiff's pregnancy rendered her more susceptible to groundless alarm, and accounts more naturally and fairly than defendant's negligence for the injurious consequences.   Certainly a woman in her condition has as good a right to be carried as any one, and is entitled to at least as high a degree of care on the part of the carrier.   It may be that, where a passenger, without the knowledge of the carrier, is sick,

feeble, or disabled, the latter does not owe to him a higher degree of care than he owes to passengers generally, and that the carrier would not be liable to him for an injury caused by an act or omission not negligent as to an ordinary passenger. But when the act or omission is negligence as to any and all passengers, well or ill, any one injured by the negligence must be entitled to recover to the full extent of the injury so caused, without regard to whether, owing to his previous condition of health, he is more or less liable to injury. If the recovery of a passenger in feeble health were to be limited to what he would have been entitled to had he been sound, then, in case of a destruction by fire or wrecking of a railroad car through the negligence of those in charge of it, if all the passengers but one were able to leave it in time to escape injury, and that one could not because sick or lame, he could not recover at all. The suggestion mentioned would, if carried to its logical consequences, lead to such a conclusion."

In *Sloane* v. *Southern Cal. Ry. Co.*, 111 Cal. 668, 680, *et seq.*, after statement of the facts of the case and of the arguments of counsel, the opinion (per Harrison, J.) (p. 680 *et seq*) says: "The real question presented by the objections and exception of the appellant is, whether the subsequent nervous disturbance of the plaintiff was a suffering of the body or of the mind. The interdependence of the mind and body is in many respects so close that it is impossible to distinguish their respective influence upon each other. It must be conceded that a nervous shock or paroxysm, or a disturbance of the nervous system, is distinct from mental anguish, and falls within the physiological, rather than the psychological, branch of the human organism. It is a matter of general knowledge that an attack of sudden fright or an exposure to imminent peril has produced in individuals a complete change in their nervous system, and rendered one who was physically strong and vigorous weak and timid. Such a result must be regarded as an injury to the body rather than to the mind, even though the mind be at the same time injuriously affected. Whatever may be the influence by which the nervous system is affected, its action under that influence is entirely distinct from the mental pro-

cess which is set in motion by the brain. The nerves and nerve centers of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves or the entire nervous system is thus affected, there is a physical injury thereby produced, and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect through some action upon the mind.

"This subject received a very careful and elaborate consideration in the case of *Bell* v. *Great Northern Ry. Co.*, L. R. 26 Ir. 428." (The opinion then quotes with approval from the Bell case, much the same portions as above quoted; and proceeds as follows.)

"This case is quoted at great length and with approval in the eighth edition of Mr. Sedgwick's treatise on Damages, section 860. Mr. Beven, in the recent edition of his work on Negligence, volume 1, pages 77–81, also comments upon it with great approval. In *Purcell* v. *St. Paul City Ry. Co.* 48 Minn. 134, the defendant so negligently managed one of its cars that a collision with an approaching cable car seemed imminent, and was so nearly caused that the attendant confusion of ringing alarm bells, and of passengers rushing out, produced in the plaintiff, who was a passenger on the car, a sudden fright which threw her into convulsions, and, she being then pregnant, caused in her a miscarriage and subsequent illness. The court held that the defendant's negligence was the proximate cause of the plaintiff's injury, and that it was liable therefor, even though the immediate result of the negligence was only fright, saying: 'A mental shock or disturbance sometimes causes injury or illness of body, especially of the nervous system."

. . . . .

"The mental condition which superinduced the bodily harm in the foregoing cases was fright, but the character of the mental excitation by which the injury of the body is produced is immaterial. If it can be established that the bodily harm is the direct result of the condition, without any intervening

cause, it must be held that the act which caused the condition set in motion the agencies by which the injury was produced, and is the proximate cause of such injury. Whether the indignity and humiliation suffered by Mrs. Sloane caused the nervous paroxysm, and the injury to her health from which she subsequently suffered, was a question of fact to be determined by the jury. There was evidence before them tending to establish such fact, and if they were satisfied from that evidence that these results were directly traceable to that cause, and that her expulsion from the car had produced in her such a disturbance of her nervous system as resulted in these paroxysms, they were authorized to include in their verdict whatever damage she had thus sustained."

. In *Dulieu* v. *White and Sons*, 70 L. J. (King's Bench Div.) 837, 842, the Court says (per Kennedy, J. p. 837.): "The statement of claim alleges that on July 20, 1900, the plaintiff, then being in a state of pregnancy, was behind the bar of her husband's public-house, and that the defendants by their servant negligently drove a pair-horse van into the public-house. It goes on to allege in paragraph 4, that the plaintiff in consequence sustained a severe shock and was seriously ill, and on September 29 following gave premature birth to a child, and in paragraph 5 that in consequence of the shock sustained by the plaintiff the child was born an idiot. Then follows the claim for damages.

"The only matter we have to decide is whether, if it be proved at the trial that the defendants' servant did negligently drive a pair-horse van, and by reason of his negligence drove it into the part of the public-house where the plaintiff was, and did thereby cause her such a nervous shock as to make her ill in body and suffer bodily pain in the way alleged, the plaintiff has a good cause of action for damages under paragraph 4. . .

"The defendants' counsel summed up his contention against the legal validity of the plaintiff's claim in the statement that no action for negligence will lie where there is no immediate physical injury resulting to the plaintiff. He has argued that the bodily harm, which in the present case resulted to the plaintiff through the shock received by her through the inroad

of the van and horses into the room in which she was, and which so acted upon her in her then state of health as to cause the bodily harm, was in point of law too remote a consequence of the negligence of the defendants' servant.

"My brother Phillimore and I agree that this contention ought not to be upheld; but as we arrive at this result by somewhat different courses of reasoning, and the case is upon the authorities not free from difficulty, and raises points of general interest, I think that I ought to state the considerations which have led me to my conclusion." The court then proceeds to discuss several cases, including *Victorian R'ways Commrs.* v. *Coultas, supra; Mitchell* v. *Rochester R'way Co., supra,* and various text writers and other cases, and pays special attention to the case of *Spade* v. *Lynn and Boston R. R. supra.* After carefully analyzing this case, the opinion concludes as follows:

"But certainly, if as is admitted, and I think justly admitted, by the Massachusetts judgment, a claim for damages for physical injuries naturally and directly resulting from nervous shock which is due to the negligence of another in causing fear of immediate bodily hurt is in principle not too remote to be recoverable in law, I should be sorry to adopt a rule which would bar all such claims on grounds of policy, and in order to repress the possible prosecution of unrighteous or groundless actions of the like kind. Such a course involves the risk of denial of justice to meritorious claims, and it necessarily implies a certain degree of distrust, which I do not share, in the capacity of legal tribunals to get at the truth in this class of case. So far as I am entitled to speak from experience, I see no reason to suppose that a jury would really have more difficulty in weighing the medical evidence as to the effects of nervous shock through fright, than in weighing the like evidence as to the effects of a nervous shock through a railway collision or a roadcar accident, where, as often happens, no palpable injury, or very slight palpable injury, has been occasioned at the time."

See also, as tending to support the same rule, *East Tenn: &c. R. R. Co.* v. *Lockhart,* 79 Ala. 315; *Fitzpatrick* v. *Great Western Ry. Co.* 12 U. C. Q. B. 645; *Yoakum* v. *Kroeger,* 27 S. W. 953; *McKeon* v. *Chicago &c. Ry. Co.* 94 Wis. 477; *Mack* v. *South-*

*Bound R. Co.*, 29 S. E. 905, 908; 1 Beven, Neg. in Law, 77 *et seq.*; 4 Sutherland on Damages, 3600, 3614; Pollock on Torts, 50; Watson on Pers. Inj. 510, § 405.

We are of the opinion that the true rule is well stated in the above cases, and that the charge to the jury as given by the court below, stating the rule as to recovery for injuries caused by fright, was a full and correct statement of the law relating to the grounds of recovery in this class of cases. The two requests to the refusal of which exception was taken were sufficiently covered by the charge of the court as previously given, instructing the jury that there could be no recovery for mere fright not accompanied by physical injury and not followed by any injury as its natural consequence.

The remaining exceptions relate to the refusal of the court to charge the jury properly and its error in charging the jury as to the plaintiff's right of recovery for such services, in nursing her daughter in her illness, as were in excess of the ordinary services she would be bound to render to a minor child. We find no error in these instructions and it does not in any way appear that the jury placed exaggerated value upon such services or that the verdict was thereby unduly increased.

On the whole, we find no error upon any point taken by the exceptions, and the same are overruled; and the case is remanded to the Superior Court with instructions to enter judgment on the verdict.

*Dennis H. Sheahan*, for plaintiff.

*Henry W. Hayes, Frank T. Easton, Lefferts S. Hoffman, and Alonzo R. Williams*, for defendant.

