**Donna REILLY et al.**

v.

**UNITED STATES of America.**

No. 87–468–Appeal.

Supreme Court of Rhode Island.

Aug. 5, 1988.

Mark S. Mandell, Susan Carlin, Lisa Dinerman, Mandell, Goodman, Famiglietti & Schwartz, Ltd., Providence, for plaintiffs.

Everett C. Sammartino, U.S. Attys. Office, Providence, for defendant.

OPINION

SHEA, Justice.

This matter comes before the Supreme Court from the United States District Court for the District of Rhode Island. Two questions have been certified to us by the Honorable Raymond J. Pettine, senior judge of that court. The questions were certified following a trial in that court of a medical-malpractice action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 through 2680 (West 1965).

The factual basis for the questions before us has been adjudicated in the case of Donna Reilly, Peter Reilly, and Heather Reilly, p.p.a. Donna Reilly and Peter Reilly. Heather Reilly was born at the Newport Naval Hospital in Newport, Rhode Island, on November 11, 1986, with severe brain damage.

Heather's parents brought claim against the United States of America. They not only claimed Heather's injuries and resulting damages including past and future care as well as pain and suffering but also made claims on their own behalf for emotional distress, loss of love, society, and affection of their daughter, and loss of each other's consortium.

The trial judge found that Heather's injury resulted from the negligent treatment given to her and her mother, Donna, during labor and delivery at the naval hospital. He awarded damages to Heather in an amount in excess of $11 million but reserved ruling on the parents' claims for negligent infliction of emotional distress pending our decision on the two certified questions. They are as follows:

1. "Must a mother who has suffered psychic injury and who meets the criteria of *D'Ambra v. United States*, 114 R.I. 643, 658, 338 A.2d 524, 531 (1975) (i.e.,

physical proximity, actual witnessing of the negligent act, and close personal relationship with the victim) in that she was present throughout and participated in her daughter's traumatic and negligent delivery, was aware of all the difficulties encountered by the attending physician, saw and heard the devastating results of the negligence of the attending obstetrician, and experiences and will continue to experience the constant stress inherent in caring for a child who has suffered a nearly total devastation of her mind and body, also suffer physical symptomatology in order to recover damages for negligent infliction of emotional distress?"

2. "Must a father who has suffered psychic injury and who meets the criteria of *D'Ambra v. United States*, 114 R.I. 643, 658, 338 A.2d 524, 531 (1975) (i.e., physical proximity, actual witnessing of the negligent act, and close personal relationship with the victim) in that he was present throughout and participated in his daughter's traumatic and negligent delivery, was aware of all the difficulties encountered by the attending physician, saw and heard the devastating results of the negligence of the attending obstetrician, and experiences and will continue to experience the constant stress inherent in caring for a child who has suffered a nearly total devastation of her mind and body, also suffer physical symptomatology in order to recover damages for negligent infliction of emotional distress?"

Although this precise question has not to date been answered directly by this court, the issue has been addressed in Rhode Island case law and in prior federal-court cases that have interpreted Rhode Island law.

In *D'Ambra v. United States*, 114 R.I. 643, 657–58, 338 A.2d 524, 531 (1975), this court responded to a certified question from the First Circuit Court of Appeals and held that

"a nonnegligent mother, who although suffering no physical impact suffers serious mental and emotional harm accompanied by physical symptoms from actually witnessing the death of her nonnegligent minor child as a direct result of the defendant's negligence, may maintain an action for negligent infliction of emotional distress, despite the fact that she herself was never in physical danger."

In expanding the zone-of-physical-danger rule, this court listed three factors as being relevant to the scope of potential liability that would allow a bystander-plaintiff to recover for negligent infliction for mental and emotional injury: "physical proximity, the actual witnessing of the accident, and the personal relationship existing between the bystander-plaintiff and the victim." *Id.* at 656, 338 A.2d at 531. Although physical symptomatology of emotional distress was not included as one of the factors to recover damages for negligent infliction of emotional distress, it was inherent in this court's analysis and specific to its holding that the "serious mental and emotional harm [was] accompanied by physical symptoms."

Furthermore this court addressed in *D'Ambra* the concept that there must be a physical manifestation of an emotional injury in order to recover damages for the negligent infliction of emotional distress. "Despite the admitted artificiality of linking recovery for mental distress to the possibility of physical injury, this limitation does reflect the core notion of some reasonable relation or nexus between the negligent conduct and the injury sued upon. Moreover, being a rule that is relatively easy to administer, it has the virtue of predictable application." *Id.* at 656, 338 A.2d at 530–31.

Therefore, although the requirement of physical manifestation of an emotional injury was not one of the criteria listed in *D'Ambra* for bystander recovery, it is quite evident that when read in the context of this court's analysis of the issue and the holding on the certified question from the First Circuit Court of Appeals, the fact that the plaintiff's mental and emotional harm was accompanied by physical symptoms was an essential prerequisite to the determination of the issue.

Second, while *D'Ambra* was being litigated in the Federal Court, prior to our

answer to the certified question presented by the First Circuit Court of Appeals, the United States District Court for the District of Rhode Island in two separate opinions determined that under Rhode Island law, recovery for mental distress required a manifestation of physical illness.[1]

In *D'Ambra v. United States,* 354 F. Supp. 810 (D.R.I. 1973), the District Court denied the defendant's motion to dismiss for failure to state a cause of action. It held that a cause of action for the negligent infliction of psychic injury exists under Rhode Island law. In discussing the law of Rhode Island the court noted,

> "The 'sifter' established under *Simone* to ferret out the claims most amenable to fraud is the requirement that no recovery can be had for mental distress that has not manifested itself in physical symptoms." *Id.* at 818.

Six months later the court awarded damages to the plaintiff. It again noted,

> "One apparent intent of the *Simone* doctrine is to ferret out those claims of injury caused by fright which are most amenable to fraud. It therefore is the objective manifestation of the injury which is crucial, not whether the injury is, in conventional terms, physical or mental." *D'Ambra v. United States,* 396 F. Supp. 1180, 1183 (D.R.I. 1973).

The case upon which that analysis was based is *Simone v. Rhode Island Company,* 28 R.I. 186, 66 A. 202 (1907). In *Simone* this court rejected the impact rule that states a plaintiff could not recover for physical injuries resulting from a mental disturbance unless the mental disturbance was caused by a physical impact to the plaintiff. In abandoning the impact rule, this court decided that a plaintiff may recover for bodily injury caused by fright, when the fright was caused by the negligence of the defendant even though there was no actual physical impact at the time of the accident, if the fright was followed by physical ills or gave rise to nervous disturbances that in turn led to physical ills.

Recent Rhode Island case law has affirmed that the Federal Court's interpretation of *Simone* was correct. In *Champlin v. Washington Trust Co. of Westerly,* 478 A.2d 985 (R.I. 1984) (finding no intentional infliction of emotional distress in a debtor-creditor relationship), we stated, in dicta, "In days gone by, this court has recognized the right to recover damages by one who has been subjected to the intentional or the negligent infliction of mental distress as long as the distress was accompanied by physical ills. *Bedard v. Notre Dame Hospital,* 89 R.I. 195, 151 A.2d 690 (1959) (intentional) and *Simone v. Rhode Island Co.,* 28 R.I. 186, 66 A. 202 (1907) (negligent)." 478 A.2d at 988.

We continue to agree with both the federal and the Rhode Island interpretation of *Simone.* Therefore, we must answer the questions certified to us by the District Court in the affirmative and find that under the law of the State of Rhode Island a plaintiff must suffer physical symptomatology to recover damages for negligent infliction of emotional distress. In so answering we adhere to the law that has been adopted by a persuasive majority of states that have confronted the issue.[2] The law is stated in the Restatement (Second) *Torts* § 436A (1965):

> "If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable dam-

**1.** *See also Plummer v. Abbott Laboratories,* 568 F. Supp. 920 (D.R.I. 1983) (granting a motion for summary judgment on the claim of negligent infliction of emotional distress in a product-liability action brought against the manufacturers of DES; in a well reasoned decision Judge Selya predicted that under Rhode Island law plaintiffs could not recover for the negligent infliction of emotional distress when there was no accompanying physical symptomatolo-

gy); *cf. Seitz v. L & R Industries, Inc.,* 437 A.2d 1345 (R.I. 1981) (denying compensation under the workers' compensation statute for worker's mental injury produced by mental stimulus in which there are neither physical causes nor physical results).

**2.** Prosser and Keeton, *The Law of Torts* § 54 at 361 (5th ed. 1984).

age, the actor is not liable for such emotional disturbance."

We base our adherence to this rule on two of the explanations listed in comment b to this section. First, "in the absence of the guarantee of genuineness provided by resulting bodily harm, such emotional disturbance may be too easily feigned, depending, as it must, very largely upon the subjective testimony of the plaintiff; and that to allow recovery for it might open too wide a door for false claimants who have suffered no real harm at all." Second, "is that where the defendant has been merely negligent, without any element of intent to do harm, his fault is not so great that he should be required to make good a purely mental disturbance." *Id.* at comment b.

The first explanation deals with the essential problem concerning claims for emotional distress: the inherent difficulty of proof. Emotional distress is an injury with vague and ambiguous symptoms. The evidence of the illness is in the subjective control of the sufferer. We recognize that a mental injury may not be less genuine absent physical symptomatology. However, we believe that because of the nature of the illness it is too difficult to substantiate absent objective physical symptomatology. We agree with the following observation made by the late Justice Samuel Roberts of the Pennsylvania Supreme Court in his dissenting opinion in *Sinn v. Burd*, 486 Pa. 146, 177–78, 404 A.2d 672, 688 (1979):

"[I]f there is no reasonable measure of plaintiff's pain, then any recovery will be essentially speculative. Then, too, the nature of our society requires of each of us a remarkable degree of emotional fortitude. It is not unreasonable to draw the line between that degree which is required and that which is not by reference to that emotional distress which causes serious physical injury or harm. And it cannot be denied that if not the genuineness, then at least the intensity and thus the nature of the injury, may be difficult to assess where it causes no physical injury."

We acknowledge that this court has recognized the advancements made in the field of psychiatry, *State v. Correra*, 430 A.2d 1251 (R.I. 1981), as well as the ability of our legal system adequately to defend itself against the prospect of an onslaught of fraudulent law suits. *Digby v. Digby*, 120 R.I. 299, 388 A.2d 1 (1978).

However, in requiring physical symptomatology as an element of a claim for the negligent infliction of emotional distress, we focus our attention and our concern on the subjectivity inherent in a claim for purely emotional distress. Accordingly we adopt the reasoning applied by the Supreme Judicial Court of Massachusetts when faced with the same problem. It stated:

"The task of determining whether a plaintiff has suffered purely emotional distress, however, does not fall conveniently into the traditional categories separating the responsibilities of the judge from those of the jury. A plaintiff may be genuinely, though wrongly, convinced that a defendant's negligence has caused her to suffer emotional distress. If such a plaintiff's testimony is believed, and there is no requirement of objective corroboration of the emotional distress alleged, a defendant would be held liable unjustifiably. It is in recognition of the tricks that the human mind can play upon itself, as much as of the deception that people are capable of perpetrating upon one another, that we continue to rely upon traditional indicia of harm to provide objective evidence that a plaintiff actually has suffered emotional distress." *Payton v. Abbott Labs*, 386 Mass. 540, 547, 437 N.E.2d 171, 175 (1982).

The second reason for denying recovery for negligent infliction of emotional distress absent physical symptomatology listed under comment b that we find instructive is that when a defendant's actions have been negligent, as opposed to intentional, his or her fault is not so great that he or she should be held responsible for a purely mental disturbance. We are focusing "not on the nature of the plaintiff's loss, but on the source and scope of the defendant's liability." *Norwest v. Presbyterian Inter-*

*community Hospital,* 293 Or. 543, 558, 652 P.2d 318, 327 (1982). We are reluctant to impose potentially unlimited and undeserved liability upon a defendant who is guilty of unintentional conduct. *See generally* Comment, *Negligently Inflicted Mental Distress: The Case for an Independent Tort,* 59 Geo. L.J. 1237, 1244 (1971).

By way of comparison, many states presently allow recovery for intentional infliction of emotional distress absent any physical manifestation of the injury. *See* Annot. *Modern Status of Intentional Infliction of Mental Distress as Independent Tort; "Outrage"* 38 A.L.R. 4th 998 (1985). In so doing they have adopted the Restatement (Second) *Torts* § 46 (1965) which states:

"Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to another results from it, for such bodily harm."

Generally, liability will be imposed for this tort only when the defendant's conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) Torts § 46, comment d (1965); *see also Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315 (1976).

The lack-of-bodily harm requirement for intentional infliction of emotional distress has been explained in that it is "[t]he outrageous and reckless or intentional nature of a defendant's conduct [that] permits a jury to infer that the plaintiff suffered genuine emotional distress." *Payton,* 386 Mass. at 547, 437 N.E.2d at 176. *See also* Restatement (Second) *Torts* § 46, comment k (1965). We do not necessarily agree with this reasoning. Emotional distress " 'does not become more real simply because it was intentionally inflicted.' " *See* Comment, *Negligent Infliction of Emotional Distress: Proposal for a Recognized Tort Action,* 67 Marq. L. Rev. 557, 600 (1984).

Rather we believe that it is the outrageous and reckless or intentional nature of a defendant's conduct that encourages courts, for public-policy reasons, to impose liability on defendants for plaintiffs' emotional distress without requiring the indicia of objectivity provided by physical symptomatology. As Professor Prosser has noted in discussing the reasons for the physical manifestation requirement, "the courts have been quite unwilling to protect the plaintiff against mere negligence where the elements of extreme outrage and moral blame which have had such weight in the intentional tort context are lacking." Prosser & Keeton, *The Law of Torts,* § 54 at 361 (5th ed. 1984). In contrast, when a defendant's conduct is negligent, the justification for tort recovery is not so strong and recovery of damages should require objective proof of the illness.

In Rhode Island the most recent case dealing with intentional infliction of emotional distress is *Curtis v. State Department for Children and Their Families,* 522 A.2d 203 (R.I. 1987). In that case we upheld the grant of a directed verdict on a claim for intentional infliction of emotional distress. In so doing, we cited *Bedard v. Notre Dame Hospital,* 89 R.I. 195, 151 A.2d 690 (1959), for the proposition that mental anguish could not be considered an element of damages in the absence of allegations that it was accompanied by physical ills. *Id.* at 198–99, 151 A.2d at 692. We further cited *Champlin v. Washington Trust Co. of Westerly,* 478 A.2d 985, 989 (R.I. 1984), which adopted Restatement (Second) *Torts* § 46 (1965), and held that a claim for intentional infliction of emotional distress also requires proof of the defendant's extreme and outrageous conduct. *See also Elias v. Youngken,* 493 A.2d 158 (R.I. 1985). We concluded that the plaintiffs did not state a claim for the intentional infliction of emotional distress because they "neither alleged nor presented evidence of physical ills suffered as a result of [their daughter's] detention, nor did they present any evidence of conduct on the part of the defendants that could be considered

extreme or outrageous." *Curtis*, 522 A.2d at 208.[3]

If physical symptomatology is a requirement for a claim of intentional infliction of emotional distress, the public-policy argument requiring evidence of physical symptomatology when a defendant's negligent conduct has allegedly inflicted emotional distress applies with even greater force. We hesitate to allow recovery for emotional distress absent physical symptomatology in a situation in which a defendant acts negligently when we do not allow recovery for emotional distress absent physical symptomatology when a defendant has acted in an extreme or outrageous manner.

In conclusion we note that we are not attempting to trivialize the severe emotional distress the plaintiffs claim to have sustained. However, based upon prior Rhode Island case law and public policy concerns, we hold that a plaintiff must suffer physical symptomatology to recover damages for negligent infliction of emotional distress.

FAY, Chief Justice, dissenting, with whom KELLEHER, Justice, joins.

I believe that the time has come to abandon the rule that denies all recovery for negligently inflicted emotional injury when that injury lacks any physical manifestation. Accordingly, I would answer the certified questions in the negative.

I recognize that a majority of other states follow the physicalmanifestation rule. *See* Prosser and Keeton, *The Law of Torts*, § 54 at 364 (5th ed. 1984). I also recognize, however, that a growing number of states have rejected that rule. *E.g., Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 616 P.2d 813, 167 Cal. Rptr. 831 (1980); *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970); *see also Taylor v. Baptist Medical Center, Inc.*, 400 So. 2d 369 (Ala. 1981); *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180 (1978); *Culbert v.*

*Sampson's Supermarkets, Inc.*, 444 A.2d 433 (Me. 1982); *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. 1983); *Johnson v. Supersave Markets, Inc.*, 211 Mont. 465, 686 P.2d 209 (1984); *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985); *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980); *Schultz v. Barberton Glass Co.*, 4 Ohio St. 3d 131, 447 N.E.2d 109 (1983); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex. 1987); *cf. Barnhill v. Davis*, 300 N.W.2d 104 (Iowa 1981) (bystander related to victim within second degree of consanguinity must have reasonable belief that victim would be seriously injured); *Chappetta v. Bowman Transportation, Inc.*, 415 So. 2d 1019 (La. Ct. App. 1982) (liability limited to foreseeable or reasonably anticipated emotional injuries).

Courts generally cite three reasons for insisting on the physical-manifestation rule. They hold that nonapparent-emotional distress is usually of a temporary and trivial nature, a state that a person can easily feign or imagine. Furthermore the courts perceive the requirement of a negligent defendant's compensating a plaintiff for a purely mental disturbance to be unfair. *See* Prosser and Keeton, § 54 at 360–61; Restatement (Second) *Torts*, § 436A, comment b (1965). No limit would exist to circumscribe a defendant's liability. Courts also base their reluctance to abrogate the rule on the fear that allowing such claims would instigate an excessive number of lawsuits. The majority opinion in the instant case, relying on *D'Ambra v. United States*, 114 R.I. 643, 656, 338 A.2d 524, 530–31 (1975), reasons that physical symptomatology is necessary to make "some reasonable relation of nexus" between the negligence and claimed injury, to provide predictability, and to allow ease of administration. My colleagues emphasize the difficulty of proving emotional injury. Although these concerns have some validity, they present no insurmountable obstacle; and I am persuaded that the court can

---

**3.** Therefore, the law in Rhode Island still requires physical symptomatology as an element of a claim when a defendant's intentional conduct has allegedly inflicted emotional distress.

In so doing, we have applied a stricter standard of proof for this cause of action than that applied by the Restatement and many other states.

address them in a manner that would permit recovery for serious and genuine emotional injury.

The argument that physical symptoms guarantee the sincerity of a plaintiff's claim fails for several reasons. First, although a claimant can also feign or imagine physical injuries, courts have not found either to be a sufficient reason to deny all such claims. Rather, courts have traditionally relied on the adversary process, with the perspicacity of its jurors and trial judges, to eliminate false claims. I maintain that the system is equally capable of distinguishing between fraudulent and genuine emotional injuries, particularly if trial courts have clear standards with which to examine such claims.

Better guarantors of authenticity than physical manifestation may exist. "It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case." Prosser and Keeton, § 54 at 361. The issue should be viewed as a matter of adequate proof. Physical manifestation of emotional trauma may provide one factor in establishing the existence of an emotional injury, but a prima facie case does not require such manifestation. *See, e.g., Versland v. Caron Transport*, 206 Mont. 313, 671 P.2d 583 (1983). To avoid compensating trivial emotional injuries, the court might, for example, require that the emotional trauma result from either death or serious injury to the victim and that the bystander share a marital or familial relationship with the victim. Thus when a plaintiff can establish that a defendant's negligence has caused emotional distress, in circumstances in which a reasonable person would have reacted similarly, the plaintiff should be allowed some financial remuneration. Assessing emotional injury in terms of what a reasonable person would experience in the circumstances of the case should allow juries not only to discriminate between true and false claims but also to evaluate the severity of the emotional harm. *See* Comment, *Negligent Infliction of Emotional Distress: A Proposal for a Recognized Tort Action*, 67 Marq. L. Rev. 557, 598–99 (1984).

The circumstances in *Wargelin v. Sisters of Mercy Health Corp.*, 149 Mich. App. 75, 385 N.W.2d 732 (1986), provide an example of circumstances indicative of genuine emotional distress. In that case parents became aware during labor that their child's fetal heartbeat had decelerated. Despite Ms. Wargelin's repeated requests for her doctor's presence, the nurse failed to summon him. Although the bluish-gray child had not begun to breathe, the delivering intern apparently did not realize that the child had been stillborn. The intern therefore presented the infant to the mother as if it were a healthy baby. At that point the supervising physician grabbed the baby and unsuccessfully attempted resuscitation.

In the ensuing action for the negligent infliction of emotional and mental distress, the court held that the cumulative effect of all of these events was sufficient to bring the action before the jury and "sufficient to cause a parent to suffer emotional and mental distress." *Wargelin*, 149 Mich. App. at 88, 385 N.W.2d at 738. The court established a foreseeability standard for similar cases.

In evaluating mental suffering in the absence of any physical injury, the court could require plaintiffs to present expert psychological evidence. To establish a claim for the negligent infliction of emotional distress, the Hawaii Supreme Court stated:

"The physician or psychiatrist must rely on the plaintiff's testimony, the context in which the trauma occurred, medical testing or any physical ramifications, the psychiatrist's knowledge of pain and disability likely to result from such trauma, and even the framework of human experience and common sense to determine the amount of pain resulting naturally as a response to defendant's act, and whether it is beyond the level of stress with which a reasonable man may be expected to cope." *Leong v. Takasaki*, 55 Haw. 398, 413, 520 P.2d 758, 767 (1974).

The requirement of foreseeable-emotional distress also counters the third argument above, the perceived unfairness of requiring a negligent defendant to compensate a plaintiff for a purely mental disturbance. I am of the opinion that in most instances serious emotional injury will produce some physical effects. *See* Prosser and Keeton, § 54 at 362. Although intentional infliction of emotional distress may warrant recovery because of the defendant's extreme behavior, "the justification for tort recovery for [negligently inflicted] emotional distress is * * * not so strong. However, even where the claim is founded on only negligence, the level and reasonableness of the emotional distress must be assessed." *Payton v. Abbott Labs*, 386 Mass. 540, 581, 437 N.E.2d 171, 193–94 (1982) (Hennessey, C.J., dissenting). Whether a person manages not to exhibit physical symptoms does not affect the authenticity of a traumatic-emotional injury. Contrary reasoning could lead a court to the anomalous result of rewarding a person for his or her weakness. In essence, it would encourage claimants to feign physical symptoms of nervous disorder.

The following reasoning supports this argument:

"The requirement is over inclusive because it permits recovery for mental anguish when the suffering accompanies or results in any physical impairment, regardless of how trivial the injury. More importantly, the requirement is under inclusive because it arbitrarily denies court access to persons with valid claims they could prove if permitted to do so. *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 929, 616 P.2d 813, 820, 167 Cal. Rptr. 831, 838 (1980).

"Additionally, the requirement is defective because it 'encourages extravagant pleading and distorted testimony.' *Id.* To continue requiring proof of physical injury when mental suffering may be equally recognizable standing alone would force 'victim[s] to exaggerate symptoms of sick headaches, nausea, insomnia, etc., to make out a technical basis of bodily injury upon which to predicate a parasitic recovery for the more

grievous disturbance, the mental and emotional distress * * * endured.' Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033, 1059 (1963)." *St. Elizabeth Hospital*, 730 S.W.2d at 652.

Other areas of the law in which "mere" emotional injury is fully compensated clarify the incongruity of the majority's position. One commentator, for example, stated:

"[T]here is no requirement that a plaintiff whose privacy has been invaded or who has been defamed show some physical manifestation of his injury to recover. In fact, until the United States Supreme Court's 1974 decision in *Gertz v. Robert Welch, Inc.*, [418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)], a plaintiff was generally allowed to recover for intangible, essentially psychic harm to his reputation without offering proof of any damage whatsoever. Such psychic harm has long been the core of several intentional torts, such as assault, false imprisonment and obviously, intentional infliction of emotional distress." Bell, *The Bell Tolls: Toward Full Tort Recovery for Psychic Injury*, 36 Univ. Fla. L. Rev. 333, 407 (1984).

The court in *Corgan v. Muehling*, 167 Ill. App. 3d 1093, 118 Ill.Dec. 698, 522 N.E.2d 153 (1988), further illustrates the irrationality of the majority's position. There the plaintiff brought a claim for negligent infliction of emotional distress against the defendant psychologist for engaging in sexual relations with her during treatment. The court refused to apply the physical-manifestation restriction of the Illinois bystander rule. The court reasoned:

"Nor can there be any rational justification for our courts to mandate that in order to qualify for damages in a psychologist or social worker malpractice case a patient exhibit physical manifestations of his or her emotional trauma suffered at the hand of therapists who are qualified to minister to their needs only in cases of mental or emotional malaise, especially since * * * such an injury, 'though difficult to prove, may be as real

as that type of injury which can be proven with mathematical certainty.' " *Corgan*, 167 Ill. App. 3d at 1102, 118 Ill.Dec. at 704, 522 N.E.2d at 159 (quoting *Omer v. Edgren*, 38 Wash. App. 376, 381, 685 P.2d 635, 638 (1984)); *see also Rowe v. Bennett*, 514 A.2d 802, 806 (Me. 1986) ("because of the nature of the psychotherapist-patient relationship, an action may be maintained by a patient for serious mental distress caused by the negligence of his therapist despite the absence of [physical symptoms and] an underlying tort").

Courts that have abandoned the physical-manifestation rule have adequately addressed the remaining arguments. The court in *James v. Lieb*, 221 Neb. 47, 58, 375 N.W.2d 109, 117 (1985), for example, noted that experience in other states has shown that their courts have not been overwhelmed with litigation in this area; they have been able to place limits on liability; and the cost to society has not been unbearable. *See also Schultz v. Barberton Glass Co.*, 4 Ohio St. 3d at 133, 447 N.E.2d at 111–12.

In *Curtis v. State Department for Children and Their Families*, 522 A.2d 203 (R.I. 1987), this court reiterated that an action for the intentional infliction of emotional distress will not lie where the plaintiffs neither present evidence of physical effects nor proffer any evidence of a defendant's outrageous or extreme conduct. I disagree with the majority's interpretation of that opinion. Although the *Curtis* opinion refers to older cases that required physical symptomatology of emotional injury, its holding pertains to the necessity of proving extreme and outrageous conduct. Such conduct eliminates the need for a physical manifestation.

Section 46 of the Restatement of Torts states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress * * *." The form of the certified questions before this court indicates the outrageous circumstances of the instant action. The parents were

"present throughout and participated in [their] daughter's traumatic * * * delivery, * * * saw and heard the devastating results of the negligence of the attending obstetrician and experiences and will continue to experience the constant stress inherent in caring for a child who has suffered nearly total devastation of her mind and body * * *."

In this situation the traumatic events virtually guaranteed a stressful reaction. Accordingly, I reject that requirement for both the intentional- and negligent-infliction-of-emotional-distress causes of action.

In summary, I believe that spurious claims and excessive damages can be avoided. By setting strict standards of proof, scrutinizing carefully the circumstances of each case, relying on expert psychological testimony, and utilizing a reasonable-person standard, courts can filter out all but the most serious, genuine claims of emotional distress. Accordingly, for those cases that fall within these guidelines, I would permit recovery. For these reasons, I respectfully dissent.