WARGELIN v SISTERS OF MERCY HEALTH CORPORATION

Docket No. 83228. Submitted November 13, 1985, at Lansing.—Decided February 5, 1986.

Plaintiffs Laurie L. Wargelin, as personal representative of the estate of Kelly A. Wargelin, deceased, and individually, and Philip B. Wargelin filed suit in Washtenaw Circuit Court against defendants Sisters of Mercy Health Corporation, doing business as St. Joseph Mercy Hospital, Jeffries, Postmus and Boudeman, P.C., and Frank Wallace Jeffries, M.D., jointly and severally, following the stillbirth of their child, Kelly A. Wargelin. Plaintiffs alleged, in separate counts, wrongful death and negligent infliction of emotional and mental distress. On motion for summary judgment by defendants, the trial court, Henry T. Conlin, J., entered a judgment in favor of defendants on the counts for negligent infliction of emotional and mental distress. Plaintiffs appealed, the trial court having certified the question for interlocutory review. *Held:*

1. Neither defendants nor the trial court indicated whether the motion for summary judgment was brought and decided based on a failure to state a claim upon which relief could be granted or on there being no genuine issue of material fact and that therefore defendants were entitled to a judgment as a matter of law. However, the Court of Appeals treated the

REFERENCES

Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 15-17, 36-40, 57.

Am Jur 2d, Parent and Child §§ 112-117.

Am Jur 2d, Summary Judgment §§ 26, 27.

Recovery of damages for grief or mental anguish resulting from death of child-modern cases. 45 ALR4th 289.

Relationship between victim and plaintiff-witness as affecting right to recover damages in negligence for shock or mental anguish at witnessing victim's injury or death. 94 ALR3d 486.

Recovery for mental or emotional distress resulting from injury to, or death of, member of plaintiff's family arising from physician's or hospital's wrongful conduct. 77 ALR3d 447.

Right to voluntary dismissal of civil action as affected by opponent's motion for summary judgment, judgment on the pleadings, or directed verdict. 36 ALR3d 1113.

motion as if it was brought on the latter basis since the parties and the trial court relied on matters extrinsic to the pleadings.

2. A parent who witnesses the negligent infliction of injury to his child and suffers emotional and mental distress as a consequence may have a cause of action based on negligence provided that: (1) the injury threatened or inflicted was serious and of a nature such that severe mental disturbance to the parent could have reasonably been foreseen to follow; (2) the shock resulted in actual physical harm; and (3) the parent was actually present at the time of the injury to the child or at least suffered shock fairly contemporaneous with the injury. The nature of the injury must be examined on a case-by-case basis in order to determine whether it was foreseeable that emotional and mental distress to the parent was likely to result.

3. The trial court erred in granting summary judgment for defendants based on a finding that the only injuries witnessed by plaintiffs were the acts attendant to resuscitative efforts which occurred after the delivery of their child. A fair reading of plaintiffs' complaint and depositions indicated that the injuries which they witnessed were not limited to the resuscitative efforts and that their emotional and mental distress was caused by the series of events which transpired. However, this must be proven at trial.

Reversed and remanded for trial.

1. JUDGMENTS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT — COURT RULES.

A motion for summary judgment based on the ground that there is no genuine issue of fact requires the court to give the opposing party the benefit of any reasonable doubt and to grant the motion only if it is satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3], now MCR 2.116[C][10]).

2. TORTS — EMOTIONAL DISTRESS — PARENTS.

A parent who witnesses the negligent infliction of injury to his child and suffers emotional and mental distress as a consequence may have a cause of action based on negligence provided that: (1) the injury threatened or inflicted was serious and of a nature such that severe mental disturbance to the parent would have reasonably been foreseen to follow; (2) the shock resulted in actual physical harm; and (3) the parent was actually present at the time of the injury to the child or at least suffered shock fairly contemporaneous with the injury; the

nature of the injury must be examined on a case-by-case basis in order to determine whether it was foreseeable that emotional and mental distress to the parent was likely to result.

*Meklir, Schreier, Nolish & Friedman, P.C.* (by *Samuel A. Meklir*), for plaintiffs.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman*), for Sisters of Mercy Health Corporation.

*Richard B. Bailey,* for Jeffries, Postmus and Boudeman, P.C., and Frank Wallace Jeffries, M.D.

Before: BRONSON, P.J., and ALLEN and M. H. CHERRY,* JJ.

PER CURIAM. In this appeal as of right, we are asked to decide whether the tort allowing bystander recovery for a parent who witnesses the negligent infliction of an injury to his or her child should apply in a unique situation. Specifically, where parents are cognizant that a fetus is in danger during labor and observe the failure to take necessary corrective measures, and then witness the resulting stillbirth of their child and subsequent actions by defendants, including the placement of the infant on the mother's stomach and efforts to resuscitate the child, should the parents be entitled to bring a cause of action seeking recovery for emotional and mental distress caused by the witnessing of these events?

The trial court answered the foregoing question in the negative, finding that plaintiffs had only witnessed resuscitative efforts which could not be viewed as inflicted "injuries". The court also determined that plaintiffs' distress resulted from the futility of these efforts, and opined that creating

* Circuit judge, sitting on the Court of Appeals by assignment.

liability in these circumstances would result in family members being excluded during the rendering of emergency treatment to loved ones. Based on these findings and consideration, the trial court granted defendants' motion for summary judgment on counts II and III of plaintiffs' complaint.[1] There was no summary disposition as to count I, the wrongful death action brought on behalf of the child. Plaintiffs appeal the order granting summary judgment, the trial court having certified the question for interlocutory review pursuant to GCR 1963, 806.3(1)(a)(ii).[2]

Laurie Wargelin was admitted to St. Joseph Mercy Hospital at approximately 5:15 a.m. on November 20, 1980. At that time, her contractions were about seven minutes apart. She was informed that her obstetrician, Dr. Frank Wallace Jeffries, had been notified of her admission but he was not

---

[1] Count II of plaintiffs' complaint sets forth the following allegations:

"1. Plaintiff Laurie L. Wargelin, individually, repeats and realleges each and every allegation in paragraphs 1 through 22, inclusive, of Count I of this Complaint with the same force and effect as though more fully set forth herein.

"2. Plaintiff Laurie L. Wargelin is the natural mother of Plaintiff's decedent, Kelly A. Wargelin.

"3. Plaintiff Laurie L. Wargelin was caused to witness the infliction of tortious injuries upon her daughter and to experience the consequential effects thereof, due to the negligence and/or malpractice of the Defendants, and each of them, as hereinbefore alleged; that as a direct and proximate result thereof, Plaintiff has been caused to suffer severe emotional, nervous and mental disturbance, resulting in physical illness and injury, including but not limited to nausea, headaches, depression, and permanent emotional and nervous disturbance."

Count III of plaintiffs' complaint sets forth identical allegations on behalf of Philip B. Wargelin, the natural father of plaintiffs' decedent.

[2] We note that plaintiffs should have proceeded by filing an application for leave to appeal instead of filing a claim of appeal as of right. See GCR 1963, 806.3. However, since defendants have never challenged this procedural irregularity and the clerk of this Court has erroneously accepted this appeal as one of right, we choose to resolve this appeal on its merits. See, *Guzowski v Detroit Racing Ass'n*, 130 Mich App 322, 324-327; 343 NW2d 536 (1983), (treating the claim of appeal as an application for leave to appeal and granting the same.)

in attendance when she entered the hospital. However, Mrs. Wargelin was examined upon admission and, consistent with Dr. Jeffries's earlier observations, it was noted that her uterus was irregular or lopsided. She was never led to believe that this factor was significant but now contends that delivery by Caesarean section was indicated by this condition.

After examination, the Wargelins were left in a labor room with one nurse in attendance. At Mrs. Wargelin's request, an external fetal monitor was attached to her abdomen. Dr. Jeffries appeard at 7:30 a.m. and briefly examined Mrs. Wargelin to ensure that she was properly dilating. At approximately 10:00 a.m., the Wargelins became distressed when the fetal monitor indicated that the fetal heartbeat had decelerated and the sounds of the beat diminished. Mrs. Wargelin repeatedly asked for Dr. Jeffries. However, the attending nurse assured her that everything was fine, explaining that interference of the pelvic bone during contractions was the cause of the diminished heartbeat or the change in heart rate. Mrs. Wargelin testified at her deposition that she and her husband remained concerned, doubting the explanation, since the deceleration in the rate of the heartbeat and the diminished sound did not always coincide with the contractions.

Dr. Jeffries reappeared at approximately 11:00 a.m. and announced that Mrs. Wargelin was ready to deliver. He inquired whether they wished to deliver in the labor room or go to the delivery room. At the Wargelins' election, they proceeded to the delivery room where an intern subsequently delivered Kelly A. Wargelin while Dr. Jeffries observed. Apparently not realizing that the infant had not begun to breath and was bluish-gray, the intern placed the child on Mrs. Wargelin's stom-

ach as if it were a healthy child. At this juncture, Dr. Jeffries grabbed the baby and took it to a nearby table where he attempted to resuscitate the child, pounding on its chest, administering shocks, and inserting a long needle in the baby's heart. During this procedure, Dr. Jeffries sent a nurse to call for a pediatrician on two occasions. The nurse returned the second time and explained that there was no pediatrician in the hospital. After approximately 15 minutes, efforts to resuscitate the child were abandoned.

Neither the defendants nor the trial court indicated whether the motion for summary judgment was brought and decided pursuant to GCR 1963, 117.2(1), for failure to state a claim upon which relief could be granted, or pursuant to GCR 1963, 117.2(3), alleging that there was no genuine issue of material fact and that judgment should therefore have been rendered as a matter of law. However, since the parties and the court relied on matters extrinsic to the pleadings, we will treat this motion as if it were brought pursuant to subsection (3) and review it accordingly. See, *Huff v Ford Motor Co,* 127 Mich App 287, 292-293; 338 NW2d 387 (1983). In a motion for summary judgment under GCR 1963, 117.2(3), now MCR 2.116(C)(10), "[t]he court must give the opposing party the benefit of any reasonable doubt, and should grant the motion only if satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome". *Johnson v Auto-Owners Ins Co,* 138 Mich App 813, 815; 360 NW2d 310 (1984).

Michigan has recognized a cause of action based on negligence in a parent who witnesses the negligent infliction of injury to his or her child and suffers emotional distress as a consequence. See, *Gustafson v Faris,* 67 Mich App 363; 241 NW2d

208 (1976); *Toms v McConnell,* 45 Mich App 647; 207 NW2d 140 (1973); *Perlmutter v Whitney,* 60 Mich App 268; 230 NW2d 390 (1975); *Miller v Cook,* 87 Mich App 6; 273 NW2d 567 (1978), *lv den* 406 Mich 890 (1979); *Williams v Citizens Mutual Ins Co,* 94 Mich App 762; 290 NW2d 76 (1980); *Henley v Dep't of State Highways & Transportation,* 128 Mich App 214; 340 NW2d 72 (1983); *Bernier v Bd of County Road Comm'rs for the County of Ionia,* 581 F Supp 71 (WD Mich, 1983) (applying Michigan law). The parameters of this cause of action were delineated in *Gustafson, supra,* pp 368-369, which adopted the limitations set forth in Prosser, Torts (4th ed), § 54, pp 334-335 and thereby created four elements which must be established in order to recover: (1) "the injury threatened or inflicted on the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff"; (2) the shock must result in actual physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock "fairly contemporaneous" with the accident. In *Gustafson,* the Court indicated that in Michigan, the bystander need not actually witness the accident as long as the injury to the individual plaintiffs occurs fairly contemporaneous with the accident. These limitations insure against deceptive claims and restrict the cause of action to bystanders whom the tortfeasor could reasonably have foreseen might have suffered mental disturbance as a result of witnessing the accident.

Defendants maintain that summary judgment was properly granted, averring that plaintiffs cannot establish the first *Gustafson* element, a serious injury of a nature to cause severe mental distur-

bance. They argue that the resuscitative efforts cannot be viewed as the negligent infliction of injury and that the injuries herein involved cannot be viewed as "sudden, brief and *inherently* shocking accidental event[s]" as contemplated by *Gustafson*. We note that no Michigan cases have interpreted what was meant by *Gustafson's* requirement of a serious injury of a nature to cause severe mental disturbance. To this extent, this case presents an issue of first impression. We also note that defendants have not cited any cases from other jurisdictions which might lend support to their interpretation of this element. Rather, they base their argument on the types of injuries which Michigan courts have heretofore recognized as serious and likely to cause mental distress, *i.e.,* children being struck by an automobile as in *Toms, supra,* and *Gustafson, supra.* See, also, *Dillon v Legg,* 68 Cal 2d 728; 69 Cal Rptr 72; 441 P2d 912 (1968).

We have found additional case law from other jurisdictions where, with factual scenarios similar to the case at bar, parents were permitted to proceed on a cause of action for recovery of mental distress damages where the parents had witnessed birth injuries to the child. *Haught v Maceluch,* 681 F2d 291, *reh den* 685 F2d 1385 (CA 5, 1982) (applying Texas law); *Sesma v Cueto,* 129 Cal App 3d 108; 181 Cal Rptr 12 (1982). However, these cases did not involve fitting the facts with the elements described in *Gustafson, supra.* Rather, in *Haught* and *Sesma, supra,* those courts were faced with determining whether the facts squared with the foreseeability test laid out in *Dillon,* 68 Cal 2d 740-741:

"In determining * * * whether the defendant should reasonably foresee the injury to plaintiff, or, in other

terminology, whether defendant owes plaintiff a duty of due care, the court will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."

In *Haught, supra,* the plaintiff's child was born with severe handicaps allegedly due to the obstetrician's failure to respond to clear signals of fetal distress (the presence of meconium or fetal excretion in amniotic fluid and deceleration of the fetal heartbeat) and the over-administration of a powerful drug during labor. Defendants argued that recovery should be disallowed since the shock did not result from the sensory and contemporaneous perception of the accident. They maintained that it resulted from perception of the resulting injury. Based on *Landreth v Reed,* 570 SW2d 486, 490 (Tex Civ App, 1978), the Court held that the foreseeability element would be satisfied under Texas law if the plaintiff had an "experiential perception" of the accident, as opposed to learning of the accident through a third person. In *Landreth,* which also relied on *Dillon,* the plaintiff witnessed attempts to resuscitate her sister where she had not viewed the negligent drowning. The court held that she could recover for the resulting shock. It was as reasonably foreseeable that she would experience shock from witnessing these events as it would have been if she had witnessed the actual drowning. Thus, the relevant inquiry as summarized in *Haught,* focuses

"more on the plaintiff's experiential perception of the *accident,* not just the injury, [and a measuring of] that perception *in comparison to learning of the accident from others after its occurrence."* 681 F2d 300. (Emphasis in original.)

In *Sesma, supra,* the mother alleged that she received little attention compared to other patients in the labor room until a nurse, after a significant lapse of time, failed to detect a fetal heartbeat. The medical staff then became noticeably alarmed and performed an immediate Caesarean section. Her doctor then spent approximately 20 minutes following delivery trying to resuscitate the child. Again, defendant alleged that there was no contemporaneous perception of the injury. The court held (1) that there was a question of fact regarding whether she had perceived the neglect in the labor room, (2) that as a direct victim, the mother could maintain a cause of action for negligent infliction of emotional distress, noting that it was difficult to fit a medically caused stillbirth into the *Dillon* mold, and (3) that the father could maintain an action for negligent infliction of emotional distress if not based on being a percipient bystander.

In *Sesma,* the court cited a line of cases which would seem to indicate that bystander recovery would not be recognized under California law where a father witnessed the stillbirth of his child. In *Justus v Atchison,* 19 Cal 3d 564; 139 Cal Rptr 97; 565 P2d 122 (1977), the court denied recovery where the father's anxiety at witnessing disturbing developments in the delivery room did not ripen to shock until the doctor informed the father that the fetus was dead. Since the shock was caused by learning of the accident from others after its occurrence, the *Dillon* criteria was found to be unsatisfied.

The *Justus* court noted an additional criterion which was imposed in *Jansen v Children's Hospital Medical Center,* 31 Cal App 3d 22; 106 Cal Rptr 883 (1973), that the accident causing the child's injury be "a sudden and brief event". Based on this prerequisite, the plaintiff in *Jansen* was denied recovery where the death of the child occurred three days after a negligent misdiagnosis. In *Justus,* the court indicated that this factor would not bar the father's recovery since "each accident [leading to the stillbirth] was a relatively sudden occurrence". 19 Cal 3d 584.

We do not find it necessary or appropriate to adopt these analyses from foreign jurisdictions in order to construe *Gustafson's* requirement that the injury be a serious one, of a nature to cause mental disturbance. Those jurisdictions do not explicitly set forth such a requirement. However, like the contemporaneous perception element found in *Dillon* and it progeny, the *Gustafson* element essentially states a foreseeability test. In other words, there is no duty owed to parents for mental distress resulting from witnessing any injury to a child unless the injuries are of such nature that it can reasonably be foreseen that mental disturbance will follow. Although mental disturbance is likely to result from witnessing a "sudden and brief event" such as an automobile accident, we do not believe that this is the only type of injury which would foreseeably cause such distress if witnessed by a parent fairly contemporaneously with the act of negligence. Accordingly, we decline to adopt the hard and fast rule describing the requisite injury which defendants espouse. Rather, we hold that the nature of the injury must be examined on a case-by-case basis in order to determine whether it is foreseeable that mental

distress to the individual parents is likely to result.

Defendants would have this Court believe that the only injuries witnessed in this case were the acts attendant to resuscitative efforts which occurred after delivery. Indeed, the trial court made such a finding and based its order granting summary judgment, in part, on this determination. We find that the trial court erred in resolving this factual question in the course of a summary judgment motion based on there being no genuine issue of material fact. Similarly, the court erred in determining that the plaintiffs' distress resulted solely from the failure of the resuscitative efforts. Not only did the trial court fail to give plaintiffs the benefit of any reasonable doubt, it resolved these factual uncertainties in favor of defendants. See *Johnson, supra.* A fair reading of plaintiffs' complaint and depositions, giving them the benefit of any reasonable doubt, indicates that the injuries witnessed were not limited to the resuscitative efforts and that their mental distress was caused by the series of events which transpired, as opposed to the failure of resuscitative efforts.

Further, we believe that the series of negligent acts and resulting events which transpired *in this particular case* were sufficient to enable plaintiffs to proceed to a jury with their causes of action. However, we caution against a broad reading of this holding and reiterate that each case must be examined on its own facts. We do *not* hold that parents may maintain an action for bystander recovery in every instance where they witness the stillbirth of their child and negligence is alleged as a causative factor. However, we believe that plaintiffs have set forth allegations describing a series of events which, when viewed as a whole, would be likely to cause mental disturbance more extensive

than the grief or trauma any parent might experience at witnessing the stillbirth of their child.

Moreover, we do not believe that the allegations of injury and attendant events can be neatly capsulized into individual packages from which we should determine whether it was reasonable to assume that mental disturbance would follow. Plaintiffs are not claiming that their distress was caused by any single event in isolation. Rather, they have alleged that their distress was caused by the cumulative effect of all events surrounding the negligent stillbirth of their child. It is *all* of the alleged events witnessed in this case which lead us to conclude that, if proven at trial, it was reasonably foreseeable that mental distress would follow from defendants' conduct.

In this case, Laurie Wargelin's obstetrician made only two brief visits during her labor, even though the fetus was in distress and he allegedly should have known that a Caesarean section delivery was indicated due to her lopsided uterus. A reasonable inference arises that, at the very least, he should not have anticipated a birth free of problems. The parents were cognizant that the fetus was endangered during labor, and observed medical personnel, who were entrusted to provide proper care, fail to recognize signals of distress, alert personnel capable of addressing the problems, and perform other duties. Much like that of the parent who arrives at the scene of an accident after an injury has been inflicted, plaintiffs' resulting emotional and mental distress at viewing the stillbirth of their child was fairly contemporaneous with defendants' prior acts of negligence. However, they were caused to witness further alleged inept actions of a nature to cause mental disturbance. The intern, allegedly failing to recognize the baby's signs of lifelessness, presented the child to the

mother in a manner reserved for successful deliveries. The parents' realization that their child was stillborn did not come from information tactfully relayed by others, but from the child's being abruptly grabbed after it had been relinquished to the parents and from their own perception that the child had not yet made any sound and was bluish-gray in color. Plaintiffs then witnessed futile efforts to revive their child while Dr. Jeffries twice requested other personnel to call for a pediatrician. It can reasonably be inferred that plaintiffs were led to believe that their child might have been saved if defendants had simply had the necessary personnel available to deal with the emergency.

Our conclusion in the above respect in no way holds or even implies that any of defendants' acts of negligence set forth in counts II and III, or in count I for wrongful death, are true or that defendants, or any one of them, were in fact negligent either by commission or omission. Defendants may well have defenses to all of the allegations of negligence contained in the bill of complaint. Those are matters which plaintiffs must establish at trial.

Likewise, our decision in this case does not hold or imply that an action for recovery for emotional and mental distress must go to the jury in every instance where a child is dead at delivery. None of the alleged traumatic events in the instant case, standing alone, would be sufficient to create an action for emotional and mental distress. We hold only that the cumulative effect of all of the events surrounding the stillbirth of the child, if proven to be negligent at trial, are sufficient to cause a parent to suffer emotional and mental distress.

It is within these parameters and reservations

that we reverse the order granting summary judgment on counts II and III of plaintiffs' complaint.

Reversed and remanded for trial. Costs to plaintiffs.