**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 24, 2002**

KENNETH D. HESSE, Personal
Representative of the Estate of
JASON L. HESSE, Deceased, KENNETH
D. HESSE, CYNTHIA R. HESSE, and
AMY R. HESSE, a Minor, by her next
friend, Kenneth D. Hesse,

    Plaintiffs-Appellees,

v

No. 118548

ASHLAND OIL, INC., formerly known as
Ashland, Inc., a foreign corporation,
doing business as Valvoline Instant Oil
Change and as the Valvoline Company,

    Defendant-Appellant,

and

CHIPPEWA VALLEY SCHOOLS, JAMES J.
RIVARD, JAMES P. MURPHY, and RUTH
ANN BOOMS, Jointly and Severally,

    Defendants.

_____

PER CURIAM

In this case, plaintiffs, the parents of the decedent[1], claimed that the decedent's employer was liable in tort for the negligent infliction upon plaintiffs of emotional distress, caused when plaintiffs were present at their son's workplace at the time of his death. The circuit court denied defendant's motion for summary disposition. The Court of Appeals granted leave to appeal and affirmed the denial of summary disposition on the claim of negligent infliction of emotional distress.[2] We reverse in part the judgment of the Court of Appeals and remand this case to the Macomb Circuit Court for entry of summary disposition in favor of the defendant on the claim of negligent infliction of emotional distress. Plaintiffs' cause of action is barred by the exclusive remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.131.

I

The sixteen-year-old decedent was hired by defendant Ashland Oil, Inc.,[3] through the Chippewa Valley Schools' work

---

[1] The decedent's minor sister is also named as a plaintiff by virtue of her loss of consortium claim. Because that claim is not implicated in this appeal, further references to "plaintiffs" in this case refer only to the parents of the decedent.

[2] The Court of Appeals agreed with defendant that the trial court erred in denying summary disposition of the claims of intentional tort and breach of contract. Those claims are not before us.

[3] While there are multiple defendants in this case, only defendant Ashland Oil is a party to this appeal. Accordingly, further references to "defendant" in this case refer only to

study plan. After securing a work permit, decedent began working for defendant at defendant's "Instant Oil Change" service facility. On June 2, 1995, a customer brought in a five-gallon bucket that was filled with a liquid believed by a coemployee of decedent to be waste oil. Following procedures outlined by the defendant, the bucket was emptied into a "catch basin." Toward the end of normal business hours, there was a problem with draining the catch basin. The coemployee set about to check the level of the waste oil in the catch basin. He purportedly did this by using a disposable lighter, which caused an explosion.[4] In the ensuing fire, decedent was killed. Decedent's parents learned of the explosion and fire almost immediately and went to the service center. While at the service center, plaintiffs were told of their son's death.

II

Plaintiffs sued their son's employer, his school, and employees of the school.[5] Of the several causes of action brought by plaintiffs against defendant Ashland, only one

---

Ashland Oil.

[4] The coemployee denied he had used the lighter to look inside the catch basin. For purposes of resolution of the issue presented by defendant, it is unnecessary to resolve this factual dispute.

[5] Decedent's parents filed several causes of action including breach of contract, gross negligence, and intentional tort. Additionally, decedent's minor sister filed an action for loss of consortium. Decedent's father also sued defendant as personal representative of his son's estate.

remained after the Court of Appeals issued its unpublished per curiam opinion on January 12, 2001 (Docket No. 209075). This was a claim by plaintiffs of negligent infliction of emotional distress.[6] Plaintiffs claimed damages from witnessing the death of their child. Defendant asserts that the cause of action is barred by the exclusive remedy provision of the WDCA, MCL 418.131, which states:

> (1) The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

> (2) As used in this section and section 827, "employee" includes the person injured, his or her personal representatives, and *any other person to whom a claim accrues by reason of the injury to, or death of, the employee,* and "employer" includes the employer's insurer and a service agent to a self-insured employer insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing worker's compensation insurance or incident to a self-

---

[6] Plaintiffs' cause of action is sometimes referred to as "bystander recovery," and its elements are set forth in *Wargelin v Sisters of Mercy Health Corp*, 149 Mich App 75; 385 NW2d 732 (1986). This Court has never recognized the existence of such a cause of action, and we decline to discuss the validity of plaintiffs' claim at this time because a discussion of the merits of the claim is unnecessary to our determination.

4

insured employer's liability servicing contract. [Emphasis added.]

III

The Court of Appeals held that the claim for negligent infliction of emotional distress brought by plaintiffs, even when it concerned a work-related accident, was a separate tort and thus not within the bar of the exclusive remedy provision. The plain language of the statute, however, states that the exclusive remedy for an employee, including "his or her personal representatives, and any other person to whom a claim accrues by reason of the injury to, or death of, the employee," is found in the WDCA. MCL 418.131(2).

This provision is dispositive of this case. Here, the plaintiffs' claim has accrued by reason of the death of an employee of the defendant. The plaintiffs are within the category of individuals barred from suit, namely, as defined by § 131(2) of the WDCA, "any other person to whom a claim accrues by reason of the . . . death of . . . the employee . . . ." Thus, the claim is barred.

In asserting that plaintiffs' negligent infliction of emotional distress claim is not barred by MCL 418.131, the Court of Appeals and the dissent here rely substantially on *Barnes v Double Seal Glass Co, Inc,* 129 Mich App 66; 341 NW2d 812 (1983), and *Auto Club Ins Ass'n v Hardiman,* 228 Mich App 470; 579 NW2d 115 (1998). However, those cases are materially

5

distinguishable from the present case and, consequently, offer little guidance in its resolution.

*Barnes* also involved a tragic workplace death of a sixteen-year-old. In that case, the Court of Appeals held that the trial court erred, on the basis of the exclusive remedy provision of the WDCA, in granting summary disposition in favor of the employer with regard to the claim of the employee's parents for *intentional* infliction of emotional distress. *Id*. at 75-76. This result does not seem unusual in any way because MCL 418.131(1) provides for an intentional tort exception to the exclusive remedy rule of the worker's compensation scheme and that is the exception the Barnes' suit invoked. Thus, since the instant case involves a nonintentional tort claim, i.e., negligent rather than intentional infliction of emotional distress, the *Barnes* holding is inapposite.

Similarly, the holding of *Hardiman* is inapposite to the resolution of the present case. Most importantly, *Hardiman* did not involve a worker's compensation question; rather, it dealt with the narrow question whether damages in a non-worker's compensation civil lawsuit, involving a "negligent infliction of emotional distress" claim, constituted "derivative damages" so that insurance coverage could be limited.[7] This issue of law is irrelevant to a discussion of

---

[7] Evidently, the negligent infliction of emotional distress claim in *Hardiman* was based on an incident in which

6

the nuances of the exclusive remedy provision of the WDCA. While there is discussion in *Hardiman* of the distinctions between derivative and independent actions in civil litigation, the statute here, MCL 418.131, controls the lawsuit in the instant case. This statute never alludes to derivative or independent actions, but simply states that claims accruing "by reason of the injury to, or death of, the employee" are barred. Thus, because these plaintiffs have claims that have accrued "by reason of" the death of the employee, they are without a remedy, and nothing *Hardiman* states affects this in the slightest.

Moreover, although we regard the plain language of MCL 418.131 as decisive, we believe that our decision is reinforced by an understanding of the history of the exclusive remedy provision of the WDCA. Helpful in this regard are this Court's companion decisions in *Moran v Nafi Corp,* 370 Mich 536; 122 NW2d 800 (1963), and *Balcer v Leonard Refineries, Inc,* 370 Mich 531; 122 NW2d 805 (1963). In both *Moran* and *Balcer,* we addressed whether a claim for loss of consortium against an employer based on an injury suffered by a spouse as an employee was barred by the then much less well-defined

---

a six-year-old witnessed her brother being struck by an automobile, which rendered the brother a paraplegic. *Id.* at 472. The *Hardiman* panel concluded that a claim for negligent infliction of emotional damages is not "derivative" because it "may be maintained as a separate, independent cause of action and is not dependent upon actual injury to, or recovery by, another person." *Id.* at 475.

7

exclusive remedy provision of the Workmen's Compensation Act, which did not then, as it does now, expressly extend to persons other than an employee.[8]

Notwithstanding the much less sweeping language in the old statute, Justice O'Hara writing for the Court had no trouble concluding in *Moran* that, not just an employee, but also a third party, was barred from maintaining a cause of action against an employer under the exclusive remedy provision. Justice O'Hara said:

> Under the above section and the title of the act, as previously discussed, we believe any broadening of the base of recovery against the employer as a result of an industrial injury to include an action at law by any other person must, if it is to be authorized, be authorized by legislative action. We hold the legislative intent expressed in the act precludes the judicial construction contended for by plaintiff and adopted by the learned trial judge [which would have allowed the loss of consortium claim to go forward]. [*Id.* at 543.][9]

---

[8] The language of MCL 411.4, the predecessor of MCL 418.131, as then in effect, stated simply:

> Where the conditions of liability under this act exist, the right to the recovery of compensation benefits, as herein provided, shall be the exclusive remedy against the employer.

[9] Three justices joined the lead opinion of Justice O'Hara in *Moran* that contained this holding. At the time, there were eight justices on this Court. In a concurring opinion, Chief Justice Carr, joined by two other justices, stated "[w]e are in accord with the holding of Mr. Justice O'Hara that the rights granted by the workmen's compensation act to an employee who sustained an injury arising out of and in the course of his employment are exclusive." *Id.* at 545. Thus, the above-quoted holding from the lead opinion in *Moran* regarding the exclusivity of the Workmen's Compensation Act constituted a majority holding of this Court. Chief Justice

8

In *Balcer,* which was considered and released with *Moran,* Justice Smith concluded to similar effect that the exclusive remedy provision barred a claim by a third party against the employer on the basis of an injury to an employee. He offered historical background that is edifying:

> "*The history of the development of statutes, such as this,* creating a compensable right independent of the employer's negligence and notwithstanding an employee's contributory negligence, *recalls that the keystone was the exclusiveness of the remedy.* This concept emerged from a balancing of the sacrifices and gains of both employees and employers, in which the former relinquished whatever rights they had at common law in exchange for a sure recovery under the compensation statutes, while the employers on their part, in accepting a definite and exclusive liability, assumed an added cost of operation which in time could be actuarially measured and accurately predicted; incident to this both parties realized a saving in the form of reduced hazards and costs of litigation." [*Id*. at 535 (Smith, J.), quoting *Smither & Co, Inc v Coles,* 100 US App DC 68, 70; 242 F2d 220 (1957) (emphasis in *Balcer*).]

Our holding in this case is also consistent with the overview of the different approaches to the exclusive remedy provision that Justice Smith discussed in *Balcer* at 533-534,

Carr's opinion included additional discussion of his view that this Court should not have adopted a cause of action for loss of consortium, *id.* at 544-545, which presumably was his reason for writing separately.

Similarly, in *Balcer,* the lead opinion, which was joined by four of the eight participating justices, indicated that the plain language of MCL 411.4 as then in effect barred the wife's loss of consortium claim. *Id*. at 532-533 (Smith, J.). The other four justices concurred for the reasons set forth in *Moran, supra. Id*. at 535 (Carr, C.J.).

9

quoting 2 Larson, Workmen's Compensation, § 66.10, p 141, as follows:

> "There are 3 general types of 'exclusive liability' clause which, for present purposes, must be carefully identified with the cases that depend upon them; from the narrowest to the broadest, they are as follows: the Massachusetts type, which only says that the employee, by coming within the act, waives *his* common-law rights; the California and Michigan type, which say that the employer's liability shall be 'exclusive,' or that he shall have 'no other liability whatsoever'; and the New York type, which carries this kind of statute 1 step further by specifying that the excluded actions include those by 'such employee, his personal representatives, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death.'" [Emphasis in *Balcer*.]

Since this was written in 1963, MCL 418.131 has been enacted and has, of course, moved Michigan into the "New York type" of exclusive remedy provision under which it is even more clear that a third party ordinarily cannot recover damages from an employer on the basis of an employee's death.

Against this background, it is all the more appropriate that, as with our predecessors, we should continue to accord a plain reading to the current exclusive remedy provision, which unambiguously bars from suit "any other person to whom a claim accrues by reason of the injury to, or death of, the employee."

No one would disagree with the dissent that the death underlying this case occurred under tragic and horrific circumstances. However, our empathy for plaintiffs does not

10

justify this Court ignoring the plain language of MCL 418.131, which bars the imposition of liability on defendant in the present circumstances. It could be argued, as undoubtedly it has been before the Legislature, that the law should allow a cause of action under circumstances like those in this case. Yet, as Justices Smith and O'Hara and the many others on this Court who have written or signed opinions to a similar effect have understood, this is a policy matter—which is to say, it is not this Court's choice to make. Rather, we, as judges, must apply the legislation as it is written. As Justice Cavanagh stated for a unanimous Court in *Huggett v Dep't of Natural Resources,* 464 Mich 711, 717; 629 NW2d 915 (2001):

> If the statutory language is clear and unambiguous, then we conclude that the Legislature intended the meaning it clearly and unambiguously expressed, and the statute is enforced as written. No further judicial construction is necessary or permitted.

Justice Kelly not only joined that statement, but earlier stated in her unanimous opinion in *Chandler v Dowell Schlumberger Inc,* 456 Mich 395, 406; 572 NW2d 210 (1998), with regard to the statute at issue there, that "[t]he Legislature can and may rewrite the statute, but we will not do so." The dissent, we assume, still adheres to this rule, but deflects the thrust of it by the claim that the language of the statute at issue is ambiguous and, thus, the judiciary is free to interpret its meaning. The worth of this argument, we believe, is self-evident to those who read this

11

straightforward statute and the statute's consistent and unvarying judicial construction over the whole of the era of worker's compensation.

In sum, plaintiffs' claim against defendant for negligent infliction of emotional distress is barred by the exclusive remedy provision of the WDCA contained in MCL 418.131.

IV

We reverse, in part, the judgment of the Court of Appeals and remand to the Macomb Circuit Court for summary disposition in favor of defendant.  We do not retain jurisdiction.

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

KENNETH D. HESSE, Personal
Representative of the Estate of
JASON L. HESSE, deceased, KENNETH
D. HESSE, CYNTHIA R. HESSE, and
AMY R. HESSE, a minor, by her next
friend, Kenneth D. Hesse,

    Plaintiffs-Appellees,

v                                         No. 118548

ASHLAND OIL, INC., formerly known
as Ashland, Inc., a foreign
corporation, doing business as
Valvoline Instant Oil Change and
as the Valvoline Company,

    Defendant-Appellant,

and

CHIPPEWA VALLEY SCHOOLS, JAMES J.
RIVARD, JAMES P. MURPHY, and RUTH
ANN BOOMS, jointly and severally,

    Defendants.
_____

KELLY, J. (*dissenting*).

    In its efforts to read the law scrupulously, the majority

has misconstrued the exclusive remedy provision of the

Worker's Disability Compensation Act,[1] giving it meaning never intended by its framers. Plaintiffs allege an injury to themselves, not to their son. Because their claim falls outside the scope of the act, this Court should affirm the decision of the Court of Appeals.

## I. Factual and Procedural Background

Plaintiffs witnessed a terrible accident that they assert was caused by defendant's negligence. They arrived at the service center simultaneously with fire fighters and found the building where their son Jason worked aflame from the explosion that had occurred there minutes before. The fire was burning too strongly for plaintiffs or anyone else to rescue Jason from inside. Mrs. Hesse, in her anguish, made a rescue effort and had to be restrained. She became so distraught that she required immediate medical attention. She and her husband remained at the scene for hours and eventually witnessed the removal of a body, presumably that of their son. Jason Hesse was burned beyond recognition, his body identified only by dental records.

As the Court of Appeals recognized, there was ample evidence that the experience traumatized both Mr. and Mrs. Hesse to the point of causing them physical harm:

> Ashland next argues that plaintiffs produced no evidence that Kenneth and Cynthia Hesse suffered

_____

[1] MCL 418.131.

2

actual physical harm as a result of the accident, other than the expected shock and distress stemming from the death of their son. We disagree. Evidence showed that Cynthia Hesse became so hysterical when she arrived at the scene of the fire that she required immediate medical treatment and sedation. Further, in her deposition, Cynthia Hesse testified that she experienced additional medical problems as a result of her trauma. Mrs. Hesse testified that her preexisting bladder condition was exacerbated by her nervous condition after Jason's death. Moreover, she suffered at least one nightmare related to Jason's death, during which she reacted so violently that she pulled muscles in her neck and shoulder, which required medical attention. Clearly, plaintiffs established a triable issue with regard to whether Cynthia Hesse incurred actual physical injury due to the shock she experienced because of her son's death.

Further, plaintiffs succeeded in establishing a triable issue with regard to whether Kenneth Hesse suffered an actual physical injury. According to the evidence, Kenneth Hesse experienced shock and trauma related to Jason's death. Mr. Hesse reported experiencing "depression, anxiety[,] sleeping problems" and an inability to concentrate. He also stated that Jason's death had caused him to abuse alcohol. In August 1996, a doctor prescribed Mr. Hesse Prozac because he was having "[a] lot of trouble with energy," which was related to Mr. Hesse's state of grief following Jason's death. This evidence establishes a triable issue with regard to whether Mr. Hesse suffered actual physical injury as a result of the accident. [Slip op, pp 9-10 (citations omitted).]

The Court of Appeals concluded that plaintiffs' claim for their own injuries caused by witnessing the fire stated a separate tort of negligent infliction of emotional distress. It was not derived from the injuries to their son. The panel cited Michigan law recognizing such a nonderivative claim. Slip op at 9, citing *Auto Club Ins Ass'n v Hardiman*, 228 Mich

App 470, 474-477; 579 NW2d 115 (1998), and *Barnes v Double Seal Glass Co*, 129 Mich App 66, 75-76; 341 NW2d 812 (1983).

## II. The Cause of Action

A claim for negligent infliction of emotional distress is generally recognized when a parent witnesses the violent death of a child. See generally Prosser & Keeton, Torts (5th ed), § 54, pp 359-367; see also *Consolidated Rail Corp v Gotshall*, 512 US 532, 545-549; 114 S Ct 2396; 129 L Ed 2d 427 (1994).[2] The common-law cause of action for negligent infliction of emotional distress has been recognized and applied in Michigan, although this Court has never ruled on the issue. *Hardiman*, *supra* at 475; *Wargelin v Sisters of Mercy Health Corp*, 149 Mich App 75, 81; 385 NW2d 732 (1986).

As stated by the Court of Appeals, the elements of negligent infliction of emotional distress are: (1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the

---

[2] The United States Supreme Court in *Consolidated Rail* noted that "[n]early all of the States" have recognized some form of negligent infliction of emotional distress. *Id.* at 544-545. It went on to identify Michigan as one of nearly half the states that "now allow bystanders outside of the zone of danger to obtain recovery in certain circumstances for emotional distress brought on by witnessing the injury or death of a third party (who typically must be a close relative of the bystander) that is caused by the defendant's negligence." *Id.* at 549, n 10, citing *Nugent v Bauermeister*, 195 Mich App 158; 489 NW2d 148 (1992).

event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not presence, at least shock "fairly contemporaneous" with the accident. *Wargelin*, *supra* at 81.[3]

Michigan generally does not regard a claim of negligent infliction of emotional distress made by a close family member to be derivative of the family member's injury. The Court of Appeals considered the difference between derivative and nonderivative actions in *Hardiman*, *supra*. There, it distinguished the claim of negligent infliction of emotional distress from claims such as loss of consortium, society, and companionship, which are derivative claims.[4] Unlike them, "a claim of negligent or intentional infliction of emotional distress may be maintained as a separate, independent cause of

---

[3] Michigan precedent does not adhere to the "zone of danger" rule that precludes liability when the witness was not in any danger himself. See 2 Restatement Torts, 2d, § 313, pp 113-115; See also 2 Stein, Personal Injury Damages (3d ed), § 10:31, p 10-69, n 23.

[4] The majority makes much of this Court's lead opinion in *Moran v Nafi Corp*, 370 Mich 536; 122 NW2d 800 (1963). There, the Court addressed only the claim of loss of consortium, describing it as "growing out of the accidental injury to the employee," or *derivative*. *Id.* at 538. See Black's Law Dictionary (6th ed), defining "derivative" as: "Coming from another; taken from something preceding; secondary." Where, unlike a claim for loss of consortium, plaintiffs' claim for negligent infliction of emotional distress is not derivative of the employee's injury, *Moran* does not support the majority's construction of MCL 418.131.

action and is not dependent upon actual injury to, or recovery by, another person." *Hardiman*, *supra* at 475, citing *Barnes*, *supra* at 75-76; *Campos v General Motors Corp*, 71 Mich App 23, 25; 246 NW2d 352 (1976).

I believe that the claim plaintiffs made in this case is not derivative of their son's accident, as the term "derivative" is used in Michigan law. For that reason, it survives the exclusive remedy provision of the WDCA. Moreover, I believe that my position finds support in the language and purpose of the WDCA.

### III. The Exclusivity of the WDCA

Although no case is on point, *Barnes* is closely analogous. In *Barnes*, the Michigan Court of Appeals determined that a claim for the *intentional* infliction of emotional distress is not covered by the exclusive remedy provision of the WDCA. There, the plaintiffs' son was killed in a work-related accident. Although intentional tort claims are generally not precluded by the WDCA, the Court of Appeals analysis of the emotional distress claim is instructive. The Court concluded that "Plaintiffs' claim for intentional infliction of emotional distress is made on their own behalf, for their own injuries, for a tort directed at them rather than at their son. The claim is not for wrongful death and is not covered by . . . the exclusive remedy provision of the WDCA . . . ." See *Id.* at 76. The instant claim for negligent

6

infliction of emotional distress belongs to plaintiffs in the same way.

The language of the exclusive remedy provision is not unambiguous, as the majority unequivocally asserts. MCL 418.131 restricts recovery to the disabled employee and "any other person to whom a claim accrues by reason of the injury to, or death of, the employee . . . ." MCL 418.131(2). The purpose of the WDCA is to provide a system of "compensation *to employees* for injuries suffered *in the course of employment*, regardless of who is at fault." *Clark v United Automotive Technology, Inc*, 459 Mich 681, 686-687; 594 NW2d 447 (1999) (emphasis added). By way of contrast, plaintiffs allege injuries to themselves. They were not employed by defendant and therefore did not sustain their injuries in the course of employment.

I believe that a fair reading of MCL 418.131 begins with the understanding that recovery under the WDCA is available to an injured employee and to individuals standing in his place. Claims outside the WDCA brought, for example, by the personal representative of a deceased employee's estate truly accrue by reason of the employee's death and are precluded by MCL 418.131. On the other hand, plaintiffs' claim is based on the effect on them of having witnessed the employee's death. It is not meant to recover for the death itself. They do not stand in their son's shoes while making this claim. Hence, it

falls outside the scope of the WDCA, and MCL 418.131 does not pertain to it.  See *Barnes*, *supra* at 71.

Notably, if plaintiffs are prevented from maintaining this action, they will also be unable to avail themselves of the remedies of the WDCA.  They will have nowhere else to turn to recover for their physical manifestations of witnessing their son's horrific death.

As this Court stated in *Clark, supra* at 687:  "In return for [the employer incurring] almost automatic liability, employees are limited in the amount of compensation they may collect from their employer, and, except in limited circumstances, may not bring a tort action against the employer." Under the majority's construction of the exclusive remedy provision, plaintiffs' recovery is precluded, but there is no corresponding "almost automatic liability" for their injuries to justify the preclusion.  That result could not have been intended by the Legislature.

## IV.  Conclusion

The majority has extended the reach of the exclusive remedy provision of the WDCA to bar plaintiffs' claim of negligent infliction of emotional distress.  The per curiam opinion effects this leap without citing any authority on point and without considering that MCL 418.131 is subject to differing interpretations.  The majority relies simply on its reading of MCL 418.131, obdurately asserting that it is plain

and unambiguous.

By contrast, the Court of Appeals interpretation of the statute is based on the sound reasoning in *Barnes*, *Hardiman*, and *Wargelin*. This Court should apply existing law and consider the purpose underlying the WDCA. It should conclude that the exclusive remedy provision must be construed as not including the claims of third parties ineligible for compensation under the WCDA, and it should affirm the judgment of the Court of Appeals.

CAVANAGH, J.

I would either grant or deny leave to appeal, but would not dispose of this case by an opinion per curiam.